In re RDR SYSTEMS DEVELOPMENT, INC. (EIN 72–0875017), Debtor.

RDR SYSTEMS DEVELOPMENT, INC., Plaintiff,

v.

GUARANTY BANK AND TRUST COMPANY, Defendant.

Bankruptcy No. 85–00420.
Adv. No. 85–0181.

United States Bankruptcy Court, M.D. Louisiana.

Jan. 24, 1986.

Jack Patrick Harris, Baton Rouge, La., for plaintiff.

Dale R. Baringer, Baton Rouge, La., for defendant.

## REASONS FOR JUDGMENT

WESLEY W. STEEN, Bankruptcy Judge.

### I. Jurisdiction of the Court

This is a proceeding arising in a case under Title 11 U.S.C. The United States District Court for the Middle District of Louisiana has original jurisdiction pursuant to 28 U.S.C. § 1334(b). By Local Rule 29, under the authority of 28 U.S.C. § 157(a), the United States District Court for the Middle District of Louisiana referred all such cases to the Bankruptcy Judge for the district and ordered the Bankruptcy Judge to exercise all authority permitted by 28 U.S.C. § 157.

This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(G) and (K); pursuant to 28 U.S.C. § 157(b)(1), the Bankruptcy Judge for this district may hear and determine all core proceedings arising in a case under Title 11 referred under 28 U.S.C. § 157(a), and the Bankruptcy Judge may enter appropriate orders and judgments.

No party has objected to the exercise of jurisdiction by the Bankruptcy Judge. No party has filed a motion for discretionary abstention pursuant to 28 U.S.C. § 1334(c)(1) or pursuant to 11 U.S.C. § 305. No party filed a timely motion for mandatory abstention under 28 U.S.C. § 1334(c)(2). No party has filed a motion under 28 U.S.C. § 157(d) to withdraw all or part of the case or any proceeding thereunder, and the District Court has not done so on its own motion.

### II. Agreed Facts

1. The Debtor is RDR Systems Development, Inc., a Louisiana corporation with its place of business at 1676 Dallas Drive, Baton Rouge, Louisiana.

2. Guaranty Bank and Trust Company ("Guaranty") is a Louisiana bank domiciled in East Baton Rouge Parish.

3. On July 5, 1983, the Debtor executed a "Statement of Assignment of Accounts Receivable." The statement was recorded in the public records of East Baton Rouge Parish on July 12, 1983.

4. On July 11, 1983, the Debtor "pledged" to Guaranty "Assignment of Accounts Receivable" (sic). The Collateral Pledge Agreement stated that it "... secures the BANK for any indebtedness of the PLEDGOR ... to the BANK, whether that indebtedness arose in the past, exists presently, or may occur at any time in the future."

5. On July 11, 1983, the Debtor executed an "Assignment of Accounts Receivable" to secure advances from Guaranty to the Debtor "... from time to time ... not to exceed however, at any one time the aggregate principal amount of $35,000."

6. Over approximately a three month period (from January 14 to April 1, 1985), the Debtor executed five notes in favor of Guaranty.

7. On April 26, 1985, the Debtor filed a voluntary Chapter 11 petition and has operated as a debtor in possession thereafter.

8. On April 26, 1985, the principal due on the five notes was $40,000; accrued interest was $1,254.81; per diem interest was $7.77.

9. Since the date that the petition was filed, collections of pre-petition receivables were deposited in two bank accounts; the Debtor was ordered to segregate the sums against which Guaranty allegedly holds a secured interest. The Debtor was also ordered to prepare certain detail and explanations of its account receivable activity; the Debtor did not supply that data to opposing counsel until the date of the hearing, and opposing counsel had inadequate opportunity to examine and to present evidence in opposition. Nevertheless, the Court will accept RDR #1 introduced into evidence on December 23, 1985, as definitive of the dollars involved unless Guaranty's counsel files a motion within the time allowed to request a rehearing; the motion may request rehearing or may request an opportunity to present additional evidence contradicting or supplementing RDR #1.

10. After pre-petition and post-petition collections of accounts receivable, the assets currently held by the Debtor against which Guaranty asserts a security interest is as follows as of the end of October [1]:

| | | |
|---|---|---|
| a. | Notes receivable uncollected | $ 6,005.00 |
| b. | Accounts receivable uncollected | 12,427.91 |
| c. | Funds held in Guaranty Bank Savings Account (from collections of A/R and N/R) | 5,090.38 |
| d. | Funds held in Campus Federal Credit Union (from collections of A/R and N/R net of $8,569.12 in withdrawals) | 8,263.64 |
| e. | Contract receivables | 15,850.00 |
| | **TOTAL** | **$47,636.93** |

11. Post-petition collection of notes receivable were $11,933. This sum was deposited into the bank accounts listed above.

12. Guaranty filed a motion for relief from the stay. By consent of the parties, the motion for relief was consolidated with Adversary Proceeding 85–0181 brought by the Debtor to avoid the assignment of A/R. Both were heard on December 9, 1985, with a final hearing on December 23, 1985.

### III. Application of Law to Fact

■ Both counsel have filed memoranda of authorities and both orally argued their positions on December 9, 1985. In oral argument, the Debtor asserted that the assignment of accounts receivable was not effective with respect to sums due under contract to the Debtor. No substantial evidence was presented on this issue, but the Court understands the issue to be as follows: the Debtor is under contract with certain customers and has performed work on those contracts; the Debtor has not billed under the contract, but the customer owed the Debtor approximately the sums listed in paragraph 10(e) above. The Debt-

---

1. Two points require elaboration. First, the Debtor has collected receivables subject to the assignment and has commingled those collections with collections of notes and with post-petition receivables that are not subject to the assignment. For reasons explained later in the opinion, La.R.S. 9:3107 does not apply to the instant case.

or has not reurged that position at final hearing and has not included any authorities with respect to it in the memorandum of authorities that he filed. The Court assumes that the Debtor has abandoned that position. However, if the Debtor has not abandoned the position, the Court finds it to be without merit since La.R.S. 9:3101 defines the term "account receivable" or "account" to mean "... any indebtedness, or part thereof, due to or arising out of the sale of goods or the performance of services ... by the assignor in connection with any business, profession, occupation, or undertaking ..." The sums due under contract would seem to meet that definition, particularly in light of the absence of any assertion or evidence that would take the amount out of the statutory definition.

At initial hearing, the Debtor also argued that the assignment was invalid because it was made prior to recordation of the notice of assignment. For that proposition, the Debtor cited *In re Wolf Bakery, Inc.*, 14 B.R. 382 (Bkrtcy., M.La., 1981). The Debtor has not reurged that position, and the Court concludes that the Debtor has abandoned the position on account of the holding of the Louisiana Supreme Court in *Agrico Chemical Company v. E.K. Painting, Inc.*, 432 So.2d 253 (La., 1983).

The Debtor continues to maintain, however, that the assignment of accounts receivable is invalid because the statement of assignment was not renewed within two years from the date of its execution. That issue cannot be resolved as easily as the others.

The Louisiana Assignment of Accounts Receivable Law, La.R.S. 9:3101, *et seq.*, was originally added in 1952 and was subsequently amended in 1964 and 1980. In 1983, the statute was amended and reenacted; the *expose de motif* states that this was done "to the end of facilitating this method of financing ... to provide those persons who wish to participate in the assignment of accounts receivable a concise,

certain law." The *expose* continues as follows:

"Specific note should be made of the inclusion of the proceeds of accounts assigned under this act. This brings Louisiana law into accord with other state laws relating to the assignment of accounts receivable. Of additional special significance are the provisions of this act which provide the requisites for an effective assignment. These provisions specifically overrule *Air Compressors, Inc. v. Big Chief Construction Company*, 367 So.2d 413 (La.App. 1st Cir., 1979), and cases following it. Other provisions in this act allow an assignor or assignee of accounts receivable made prior to the effective date of this act to elect to be governed by this act."

La.R.S. 9:3110 (added by the 1983 act) effects the objective of the last sentence of the *expose;* subparagraph (B) of § 3110 provides as follows:

"An assignor or assignee of accounts receivable made or perfected prior to the effective date of this part may elect to come under the provisions of this part by filing a notice of assignment and by otherwise complying with this Part."

The 1983 amendment of the accounts receivable law did not become effective until September, 1983, subsequent to the assignment documentation involved in this case.[2]

Under the old law, La.R.S. 9:3106 provided that the statement of assignment of accounts receivable became ineffective unless the inscription was renewed within two years from the date of the execution of the statement. Under the new law, La.R.S. 9:3106 provides that "the effect of a notice of assignment shall cease if the inscription has not been renewed by reinscribing within five years from the date of the filing of the original notice of assignment."

The Debtor argues that the old law applies, that reinscription was not effected, and that the assignment of accounts receivable terminated in July of 1985. Guaranty asserts three arguments in response: first,

**2.** In this opinion, the pre-1983 law will be referred to as "the old accounts receivable act" and the 1983 amendments will be referred to as "the new accounts receivable statute."

that the five year reinscription requirement applies, arguing that the requirement for reinscription is a form of liberative prescription and that liberalization of the reinscription requirement applies to the recordation of all statements of assignment that have not become ineffective prior to its effective date. Second, Guaranty argues that § 108(c) of the Bankruptcy Code extends the date of reinscription to a date which has not yet occurred in the case at bar; third, Guaranty argues that La.R.S. 9:3110 of the new assignment of accounts receivable act (the text of which is quoted above) does not apply to the case at bar because the comments to that section state that § 3110 was intended "to avoid the problems raised in *Agrico Chemical Company vs. E.K. Painting* ... and *In re William Wolf Bakery, Inc.* ..." The Court will take the arguments in reverse order.

■ The first question is whether the new accounts receivable act or the old accounts receivable act applies to the case at bar. As will be demonstrated later in this opinion, the issue is far more important than simply the question of when the statement of assignment (or notice of assignment) of accounts receivable must be reinscribed. Unfortunately, the objective providing "a concise, certain law" expressed in the *expose de motif* of the 1983 revision of the accounts receivable assignment statute was not achieved. The statute has been amended twice since 1983 and more work may yet need to be done. With respect to the instant issue, whether an assignment of accounts receivable executed in July, 1983, is governed by the old act or by the new act, the Court can find only two guidelines. First, the *expose de motif* states that some provisions in the act "allow an assignor or assignee of accounts receivable made prior to the effective date of this act to elect to be governed by this act." This statement would seem to indicate that assignments executed prior to the effective date of the 1983 amendments would be governed by prior law unless an election were made to be governed by the new law. The other guideline seems to confirm that conclusion.

La.R.S. 9:3110(B)(cited above) indicates that an election to be governed by the new accounts receivable act can be achieved "by filing a notice of assignment and by otherwise complying with this Part." Since no evidence was introduced of any step by either party to elect to be governed by the new statute, the Court concludes that the rights of the parties in this case are governed by the prior statute. Accordingly, the effectiveness of the statement of assignment of accounts receivable ceased to be effective in July of 1985.

As noted, Guaranty argues that the Louisiana jurisprudence has held that liberalization of "liberative prescription" applies to existing rights; the Court finds this argument to be inapplicable to the case at bar since the legislature apparently provided a method for election to be covered by the new statute. Given this election and given the failure of the parties to make the election, the cases cited by Guaranty are not considered applicable.

■ Finally, Guaranty has argued that § 108(c) of the Bankruptcy Code extends the time for reinscribing the statement of assignment. This argument is not persuasive since § 108(c) applies to "commencing or continuing a civil action in a court other than a bankruptcy court." The issue at bar is reinscription of a statement of assignment and not the institution of a civil action. However, the Court finds that reinscription was not necessary and that the statement of assignment of accounts receivable is effective for the reasons stated in *In re Bond Enterprises, Inc.*, 54 B.R. 366 (Bkrtcy., D.N.Mex., 1985). The substance of that conclusion is that the validity of the assignment in the circumstances of the case at bar is tested at the date of filing, not at a subsequent date.

Having concluded that the statement of assignment of accounts receivable was valid at the time of filing, and that (under the reasoning of *In re Bond Enterprises*) the assignment remained valid, the Court now turns to a consideration of the property in which Guaranty has a secured interest.

The Court finds under the documentation involved that the necessary requisites for an assignment of accounts receivable were accomplished.

The next question is whether Guaranty has a secured interest in the proceeds of the receivables as well as in the receivables themselves. The security interest documentation provides that proceeds of the accounts will be held *in trust* by the Debtor and will be deposited into an account in Guaranty; the documentation further provides that the account at Guaranty will be held *in pledge* by Guaranty against any of the Debtor's indebtedness to Guaranty. The document that contains these provisions is an act under private signature, not acknowledged. A trust, under Louisiana law, must be executed in authentic form or must be acknowledged by the settlor or by the affidavit of one of the attesting witnesses.[3] These formal requirements for a trust were not met in the instant case and the Court finds that proceeds held by the Debtor were not held in trust. Further, as to a security device on property (cash) acquired post-petition by the Debtor, § 552 of the Bankruptcy Code provides that the security device is ineffective except to the extent that the security device is effective under non-bankruptcy law with respect to proceeds, product, offspring, rents, *etc.* While § 552 would not affect a pre-petition pledge of a bank account, it does not permit a post-petition pledge of funds.

■ Section 552 would not affect an assignment of receivables that, under general Louisiana law, applied to proceeds of the account. However, under the old assignment of accounts receivable act, the assignment did not apply to the proceeds of accounts receivable. To remedy this problem, La.R.S. 9:3107 was enacted in the new assignment of accounts receivable act. The comments of the Louisiana State Law Institute to this section indicate that the provision is new and that it did not exist under prior law; a statement in the *expose*

*de motif* to the entire act is in accord. As noted, the Bankruptcy Code does not recognize post-petition security devices except to the extent that they are generally effective under state law to create security interests in the proceeds of property on which the Debtor formally held a security device. Under general Louisiana law, however, the trust provision of the assignment of accounts receivable is not valid; the pledge aspect of the account in Guaranty Bank is also invalid since it is not part of general Louisiana law with respect to proceeds of collections of accounts receivable but rather is the creation of a post-petition security device effected by the deposit of the money into the account. Therefore, the Court finds that any cash collected from accounts receivable including, but not limited to the funds deposited in Guaranty Bank, are not subject to Guaranty's assignment of accounts receivable since the law applicable to this security device did not grant a security interest in the proceeds of the accounts receivable and since the only post-collection security device created was effected by the pledge which came into existence post-petition when money was deposited into the account.

■ There is a second reason why most of the funds held in either of the bank accounts is not subject to Guaranty's security device. Of the $12,023.50 in said accounts[4] the sum of $11,933 is a sum collected from notes receivable. The Louisiana assignment of accounts receivable statute clearly states that the term "accounts" does not include any "indebtedness evidenced by a promissory note or a negotiable instrument."[5] Therefore, any account evidenced by a note or negotiable instrument is not an account and, consequently, the collections of that note would not constitute an account. It would appear that little, if any, of the funds held in the two accounts would constitute the proceeds of accounts receivable, even if the Court were to conclude that the proceeds of accounts receivable because of the pledge

---

**3.** La.R.S. 9:1752.

**4.** Excluding $1,330.72 resulting from the collection of post-petition receivables.

**5.** La.R.S. 9:3101(1).

language in the assignment document were also subject to Guaranty security interest.

The Court thus concludes that Guaranty's assignment is valid with respect to accounts and accounts receivable, but that Guaranty's security interest does not apply to notes receivable, the collection of notes receivable, or the proceeds of accounts receivable. For reasons stated, Guaranty's security interest will apply to accounts yet uncollected and to contract receivables. As adequate protection, an order will be entered coincident with these reasons for judgment; the order will grant Guaranty substitute liens in the nature of a post-petition assignment of accounts receivable with respect to accounts not yet collected and with respect to contract receivables. The order will also require the Debtor to pay over such collections directly to Guaranty upon receipt.

The Debtor will submit an order, but the order prohibiting the Debtor from collecting accounts receivable and granting Guaranty a substitute lien in the way of adequate protection and requiring the Debtor to pay over collections of accounts receivable is effective upon notice by the Court to the Debtor on December 23, 1985.