In re Theodore A. VASSILOWITCH
a/k/a Theodore A. Vassil, Debtor.

John A. MAIONA, as Chapter 7 Trustee
of Theodore A. Vassilowitch a/k/a
Theodore A. Vassil, Plaintiff,

v.

Theodore A. VASSILOWITCH, Elizabeth
Vassilowitch and Branford Savings
Bank, Defendants.

Bankruptcy No. 85–01190–JNG.
Adv. No. 86–1435.

United States Bankruptcy Court,
D. Massachusetts.

April 21, 1987.

Joseph S.U. Bodoff, Kaye, Fialkow, Rich-. mond & Rothstein, Boston, Mass., for defendants.

Joan N. Feeney, Hanify & King, Boston, Mass., for plaintiff/debtor.

John Maiona, Boston, Mass., trustee.

## MEMORANDUM

JAMES N. GABRIEL, Chief Judge.

The matter before the Court is the Trustee's Complaint, filed on November 7, 1986, pursuant to 11 U.S.C. § 363(h). The Trustee seeks to sell the Debtor's interest in real estate, consisting of one and one-half acres of land and a nine-room, raised ranch-style home containing four bedrooms, a living room, a dining room, a kitchen, a family room, a utility room and a two-car garage (the "property"). The Debtor owns the property, which is located at 170 Maupas Road, North Guilford, Connecticut, with his former wife Elizabeth Vassilowitch ("Mrs. Vassilowitch"), as a tenant-in-common. The Debtor filed an answer to the Trustee's Complaint assenting to the sale. Mrs. Vassilowitch filed an answer and, shortly thereafter, an amended answer and counterclaim. In her answer, she contests the Trustee's allegations: (1) that partition of the property is impracticable; (2) that the sale of the estate's interest alone would produce significantly less for the estate than the sale of the entire property free of her interest; and (3) that the benefit to the estate from a sale free of her interests would outweigh the detriment to her, since the Debtor's interest in the property serves as the only asset of value to be distributed to his creditors. Mrs. Vassilowitch, in her counterclaim, invokes sections 362 and 108 of. the Bankruptcy Code and seeks relief from the automatic stay to exercise a purported purchase option granted to her in a divorce proceeding. Alternatively, she contends that, if the exercise of her purchase option is found to be untimely, she is entitled to two-thirds of the proceeds of sale of the property pursuant to the provisions of a judgment entered in a divorce proceeding. The Court conducted a trial of this matter on January 13, 1987. The Debtor, Mrs. Vassilowitch and a neighbor of Mrs. Vassilowitch, Arthur Hunt, testified.

## FACTS

The facts essentially are undisputed. The property that the Trustee wishes to sell is the former marital home of the Debtor and Mrs. Vassilowitch. The Debtor and Mrs. Vassilowitch separated in November of 1984, and divorce proceedings eventually were commenced by the Debtor. The Superior Court for the Judicial District of New Haven, Connecticut entered a divorce decree on September 3, 1985. The Connecticut court awarded custody of the two children to Mrs. Vassilowitch, fixed alimony and support obligations, found and provided for the Debtor's arrearage on the pendente lite orders, divided various items of personal property and fixed the Vassilowitchs' respective interests in the property as follows:

2. The residence at 170 Maupas Road, Guilford, Conn. shall remain in the joint names of the parties. The parties [sic] interests therein shall be treated in the following manner:

a. The defendant [Mrs. Vassilowitch] may buy out the plaintiff's share for $10,000 until April 1, 1986 (which amount shall be reduced by any arrearage due as of that date).

b. If the defendant does not buy out the plaintiff's share by April 1, 1986 the house will be placed on the market for sale no later than the April 1, 1986 date.

In the event of a sale, the parties will cooperate in listing the house at a reasonable price. From the gross sale price shall be subtracted the then due first mortgage, broker's commission, if any, normal closing costs and mutually agreed upon fix up expenses for sale. The amount remaining shall then be apportioned ⅔'s to the defendant and ⅓ to the plaintiff. (The plaintiff's amount shall be reduced by any arrearage due as of that date.)

From the date of entry of this judgment, the defendant shall be responsible for all carrying costs on the Maupas Road property including repairs up to $200. per occurrence. She shall fully indemnify and hold the plaintiff completely harmless from said expenditures. For as long as the defendant is an owner of said property, all repairs over $200. per occurrence, as to that part of the repair which exceeds $200. shall be paid ⅔'s by the defendant and ⅓ by the plaintiff.

Neither party shall further encumber said property.

Shortly after the entry of the September 3, 1985 divorce decree, the Debtor, on October 23, 1985, filed a voluntary petition under Chapter 7 of the Bankruptcy Code. Mrs. Vassilowitch remained in the former marital home where she presently resides with her two children, ages seven and five. The property is encumbered by a first mortgage, the balance of which is approximately $85,000. Mrs. Vassilowitch makes the monthly mortgage payment of $1,053. The mortgage is current except for a small pre-divorce arrearage.

During the trial, the Debtor acknowledged that the property was appraised at $179,000. However, he testified that in his opinion, the property is worth over $200,-000.

With respect to the purchase option contained in the September 3, 1985 Memorandum of Decision, the evidence presented at trial clearly established that Mrs. Vassilowitch did not exercise the option by April 1, 1986. In late March of 1986, the Debtor telephoned Mrs. Vassilowitch to inquire whether she would be buying out his interest. Mrs. Vassilowitch responded that she lacked the funds to exercise the option. Although her neighbor, Arthur Hunt, was willing to lend Mrs. Vassilowitch the money to purchase the Debtor's interest, he did not, in fact, turn over funds to her.

The parties correctly have identified the legal issues that emerge from the foregoing facts as follows:

1. What is the extent of the estate's interest in the property?
2. Whether the unexercised purchase option granted to Mrs. Vassilowitch can be extended by reason of 11 U.S.C. § 108?
3. Whether the Court should authorize the sale of the property pursuant to 11 U.S.C. § 363(h)?

## DISCUSSION

■ With respect to the first issue presented, "[t]he Debtor's interest in the property. as of the date of the filing is determinative. The commencement of a bankruptcy case creates an estate, including all legal and equitable interests of the Debtor in property as of the commencement of the case." *In re Addario*, 53 B.R. 335, 337 (Bankr.D.Mass.1985); *cf.* 11 U.S.C. § 541(a). For purposes of determining what becomes property of the estate at the time of the filing of the petition, state law governs. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Moreover, "the bankruptcy court cannot create an interest for the debtor where none exists." *In re Anne Cara Oil Co., Inc.*, 32 B.R. 643, 647 (Bankr.D.Mass.1983).

■ Mrs. Vassilowitch urges this Court to respect the judgment of the Connecticut divorce court. She cites *In re Johnson*, 51 B.R. 439 (Bankr.E.D.Pa.1985), a case in which the court stated: " 'It is appropriate for bankruptcy courts to avoid incursions into family law matters out of consideration of court economy, judicial restraint, and deference to our state court bretheren and their established expertise in such matters.' " 51 B.R. at 443. More significantly, Mrs. Vassilowitch maintains that the Debtor's interest in the property was fixed

by the Connecticut divorce court pursuant to its Memorandum of Decision prior to the filing of the bankruptcy petition.

The Trustee, joined by the Debtor, argues that the Debtor held a fifty-percent ownership interest in the property as of the date of filing. Their argument is predicated on a puzzling misstatement of the facts, i.e., that the Superior Court judgment granting Mrs. Vassilowitch two-thirds of the proceeds of a sale of the property was entered after the commencement of the bankruptcy and the concomitant creation of the bankruptcy estate. This is simply not the case, and, consequently, cases cited by the Trustee and the Debtor that stand for the proposition that a divorce court has no jurisdiction to partition estate property or determine the interests of non-debtor spouses are irrelevant.

■ The Trustee and the Debtor also assert that even if the Court considers the Superior Court's order to be a valid one, the Debtor's obligation to divide the proceeds on a one-third/two-thirds basis is dischargeable pursuant to section 523(a)(5)(B) of the Bankruptcy Code. That section provides in relevant part:

(a) A discharge under Section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt— ...

(5) to a spouse, former spouse, or child of the debtor for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made or in accordance with state or territorial law by a government unit, or property settlement agreement, but not to the extent that—....

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

11 U.S.C. § 523(a)(5)(B).

The Court is unable to conclude that the judgment of the Connecticut Superior Court should be disrupted. Mrs. Vassilowitch correctly perceives that the section

523(a)(5) cases cited by the Trustee and the Debtor in their joint memorandum deal with divorce decrees and separation agreements that both allocate jointly held property and create financial obligations. Mrs. Vassilowitch also perceives that only the financial obligations, the debts, the liabilities on claims, *cf.* 11 U.S.C. § 101(11), are held to be nondischargeable by the courts, not the allocations of property interests themselves. In other words, section 523(a)(5)(B) is simply not applicable where, as here, the property interests of the parties were fixed pre-petition. Accordingly, the Court finds that the interests of the Debtor and Mrs. Vassilowitch in the property are those stated in the Memorandum of Decision.

■ Mrs. Vassilowitch is on less solid ground with respect to her argument that because there was a continuing divorce proceeding involving a claim against the Debtor, the effect of 11 U.S.C. § 108(c) must be considered. That section provides:

(c) Except as provided in section 524 of this title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for *commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor,* or against an individual with respect to which such individual is protected under section 1201 or 1301 of this title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.

11 U.S.C. § 108(c) (emphasis supplied). The Court is unpersuaded that the language of section 108(c) is applicable to the state court divorce proceeding and the purchase option contained in the state court's

Memorandum of Decision. More particularly, the Court is unpersuaded that section 108(c) operates to toll the time for exercising the option. The deadline imposed by the divorce court for the exercise of a purchase option is not the type of statute of limitation contemplated by section 108(c). That deadline did not fix a period for commencing or continuing a civil action and cannot be construed as such simply because it arose in a continuing state court divorce proceeding.

■ Moreover, even assuming that section 108(c) applies and the deadline for the exercise of the purchase option was extended until May 16, 1986 (30 days after the entry of the debtor's discharge and the simultaneous expiration of the automatic stay, cf. 11 U.S.C. § 362(c)(2)(C)), Mrs. Vassilowitch failed to establish that she tendered her former husband $10,000 by that later date.

Turning now to the merits of the Trustee's request to sell the property pursuant to section 363(h), the Court finds, with one reservation, that the Trustee has established the requisite elements of section 363(h). That section provides:

(h) Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—

(1) partition in kind of such property among the estate and such co-owners is impracticable;

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

(4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power. 11 U.S.C. § 363(h).

■ It is undisputed that the property is not used in the production, transmission or sale of electricity, gas for heat, light or power, cf. 11 U.S.C. § 363(h)(4). Additionally, the Debtor testified and common sense supports his testimony, that the partition of the property would be impracticable, cf. 11 U.S.C. § 363(h)(2). With respect to the third finding necessary under section 363(h)(3), the Court is persuaded that the benefit to the estate outweighs the detriment to Mrs. Vassilowitch, although clearly she and her children will suffer substantial hardship if she is unable to purchase the property from the Trustee, cf. 11 U.S.C. § 363(i), and she is forced to move. Nevertheless, the Debtor testified that his interest in the property was essentially his only asset and that its liquidation was the only way funds would become available for distribution to his creditors. The Court notes that even with a two-thirds/one-third allocation of equity in the former marital home, there will likely be close to a 100 percent dividend to creditors assuming the accuracy of the figures submitted to the Court, i.e. the mortgage balance and the value of the property.

With respect to the second finding necessary under Section 363(h), the Trustee relies on *In re Addario*, 53 B.R. 335 (Bankr. D.Mass.1985), for the proposition that where the property is a dwelling, a sale of only the estate's interest would realize virtually nothing for the estate because potential purchasers would not be inclined to bid with the co-owner's continued presence. While the Court is inclined to agree with that proposition, the Trustee and the Debtor overlook the fact that in *In re Addario*, the Court's finding was based upon the testimony of an appraiser. Therefore, in view of the absence of testimony or documentary evidence on this point, the Court must take judicial notice that the sale of the estate's interest in such property would realize less than the sale free of Mrs. Vassilowitch's interest if it is to make the requisite finding. Federal Rule of Evi-

dence 201, which is made applicable to this proceeding by Bankruptcy Rule 9017, governs the taking of judicial notice of facts. It provides in relevant part:

(a) Scope of Rule. This rule governs only judicial notice of adjudicative facts.

(b) Kinds of Facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

(c) When Discretionary. A court may take judicial notice, whether requested or not.

(d) When Mandatory. A court shall take judicial notice if requested by a party and supplied with the necessary information.

(e) Opportunity to be Heard. A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.

(f) Time of Taking Notice. Judicial notice may be taken at any stage of the proceeding....

In view of Mrs. Vassilowitch's reminder, based upon the Advisory Committee Note to Fed.R.Evid. 201, that "a high degree of indisputability is the essential prerequisite" to taking judicial notice of facts, the Court takes judicial notice of the fact that the estate's undivided interest would realize significantly less for the estate than a sale free of Mrs. Vassilowitch's interest with the proviso that the Court will entertain a Motion for a Reconsideration if Mrs. Vassilowitch, within ten days of the entry of this Order, presents to the Court, together with the motion, an affidavit of a qualified appraiser that states the contrary.

In view of the foregoing and the arguments of counsel, whether or not specifically mentioned herein, the Court hereby authorizes the Trustee to sell the property located at 170 Maupas Road, North Guilford, Connecticut. The Trustee is further ordered to distribute the proceeds (the net equity) as follows: two-thirds to Mrs. Vassilowitch and one-third to the estate less the amount of the Debtor's alimony and support arrearage, which has been scheduled at $3,304.98 and the attorney fee obligation fixed at $1500, *see Richards v. Loncar*, 14 B.R. 276, (N.D.Ill.1981) (obligation to pay attorney fees for an attorney's representation of a former spouse in a divorce proceeding constitutes an obligation in the nature of alimony, maintenance or support, regardless of whether the fees are to be paid directly to the spouse or to counsel).