**In re Linda GAUTHREAUX, Debtor.**

**Michael G. BERLAND, not individually but as Trustee, Plaintiff,**

**v.**

**Linda GAUTHREAUX and Isaac Hendricks, Defendants.**

**Bankruptcy No. 95 B 23881.
Adversary No. 96 A 01373.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

March 27, 1997.

Richard G. Larsen, Myler Ruddy & McTavish, Chicago, IL, for Plaintiff.

Alonzo H. Zahour, Bolingbrook, IL, for Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JACK B. SCHMETTERER, Bankruptcy Judge.

Following trial, both sides having rested and the parties having submitted their respective closing arguments in writing, the following Findings of Fact and Conclusions of Law are made and entered:

### FINDINGS OF FACT

1. Defendant Linda Gauthreaux is the Debtor in her Chapter 7 proceeding filed pursuant to her voluntary petition on November 7, 1995 (Factual Stip. at 2), to which this Adversary proceeding relates. While sued herein, she did not participate in the trial or assert any interest in these proceedings.

2. The Plaintiff, Michael G. Berland, is the duly appointed and acting Chapter 7 Trustee in bankruptcy for the estate of the Debtor. Factual Stip. at 1.

3. This Adversary proceeding is brought pursuant to Bankruptcy Rule 7001 and seeks to authorize the Chapter 7 Trustee to sell the estate's interest in property along with the interest of a co-owner of the property pursuant to 11 U.S.C. § 363(h). Factual Stip. at 4.

4. Defendant Isaac Hendricks is the co-owner of property of the bankruptcy estate consisting of the subject residential real estate commonly known as 307 Charlestown Drive in Bolingbrook, Illinois (the "Property"). Factual Stip. at 3.

5. As of the date of Debtor's filing in bankruptcy, title to the Property was held by Debtor Linda Gauthreaux and Isaac Hendricks as joint tenants. Factual Stip. at 7. Mr. Hendricks had himself alone originally purchased the subject property in September of 1986 for the approximate price of $73,000.00, and he personally made the down payment of about $1,000.00, but took title jointly with Ms. Gauthreaux. Hendricks Testimony.

6. Linda Gauthreaux, the Debtor, lived in the property with Mr. Hendricks from the time of its purchase until late 1989 or January 1990, but her contributions to the household were limited to purchasing groceries on occasion. By early 1990, she had left the Property and has not since lived with Mr. Hendricks.

7. From his personal funds, Hendricks paid all the monthly mortgage installments due on the property since its purchase, and further paid all taxes and insurance and maintenance costs on that house from the date of its purchase to the present time. Hendricks' Testimony.

8. As of the date of Debtor's bankruptcy filing, the fair cash market value of the subject property was $123,000.00. Factual Stip. at 8, and Hendricks' testimony.

9. As of the date of filing, there was a first mortgage on the property to Indiana Tower Service, Inc. The approximate payoff balance on the first mortgage is $68,000.00. Factual Stip. and Hendricks' testimony.

10. Other than the first mortgage as referred to in paragraph 9 of these Findings, there are no other liens or encumbrances on the subject property. Factual Stip. at 10.

11. The subject property is a single family residence now occupied by Defendant Isaac Hendricks. Factual Stip. at 11. It is not practical to partition the home so as to sell the Trustee's interest separately.

12. The Debtor, Linda Gauthreaux, did not claim the subject property as exempt pursuant to her Schedule C filed with the Bankruptcy Court. Factual Stip. at 12.

13. Other than the subject property, there are no non-exempt assets of the bankruptcy estate from which to make payments to creditors. Factual Stip. at 13.

14. The property is not used in the production, transmission, or distribution for sale of electric energy or natural or synthetic gas for light, heat, or power. Factual Stip. at 14.

15. Based upon the stipulated facts, sale of the property free and clear of Mr. Hen-

dricks' interest at the fair cash market value stipulated to by the parties would net the following distribution for the estate and the Defendant Hendricks.

| | | |
|---|---|---|
| Fair Market Value as Stipulated | = | $123,000.00 |
| Mortgages Balance | = | ($68,000.00) |
| Costs of Sale (10%) | = | ($12,300.00) |
| Net Sale Proceeds | = | $ 42,700.00 |
| ½ Net Proceeds to Estate | = | $ 21,350.00 |
| ½ Net Proceeds to Isaac Hendricks | = | $ 21,350.00 |

However, there was no evidence to show how much of a capital gains tax obligation would be owed by the Trustee and Hendricks, and how much that would reduce the net proceeds to each, although some such consequence is likely.

16. For economic and market reasons, sale by the Plaintiff Trustee of the estate's undivided one/half interest will realize less than the $21,350.00 that the estate might net (prior to tax consequences) from the above-described sale of the entire property. *See In re Griffin*, 123 B.R. 933, 935–6 (Bankr. S.D.Fla.1991); *In re Vassilowitch*, 72 B.R. 803, 807–8 (Bankr.D.Mass.1987); Fed.Rule Evid. 201.

17. The defendant Isaac Hendricks is a single male gainfully employed at Matshushita Services Company in Elgin, Illinois. Hendricks earns gross annual salary of about $61,000.00 or $62,000.00.

18. Defendant has no dependents. His monthly mortgage payment on his residence is $903.00. This payment includes real estate taxes and insurance. His monthly car payment (on a 1993 Nissan) is $367.00. He also owes the following debts and monthly payments:

| Creditor | Debt | Minimum Monthly Payment |
|---|---|---|
| Discovery Card | $ 4,000 | $ 200 |
| Shell Master Card | $ 3,000 | $ 100 |
| Assoc. Nat'l | $ 5,000 | $ 110 |
| First Nat'l Bank | $ 4,000 | $ 115 |
| First Card Account | $ 3,000 | $ 100 |
| Chase Advantage Credit Acc't | $ 6,000 | $ 180 |
| Sears | $ 3,000 | $ 75 |
| VISA | $ 3,000 | $ 50 |
| Citibank | $ 6,000 | $ 100 |
| TOTALS | $37,000 | $1,930 |

19. Defendant testified regarding the foregoing debts he owes. On cross-examination, Defendant admitted that he did not testify regarding all of the foregoing debts when under oath at a deposition conducted one week prior to trial, but his trial demeanor and testimony were nonetheless credible.

20. Hendricks has no material savings or investments. While he testified that he thought his credit was good and that he might be able to borrow money, he was unable to qualify for a loan of approximately $20,000.00 sought by him in late 1996 due to the debt/income ratios that he experienced, namely because he then had too much debt compared to the income that he earned to qualify for any additional debt. Therefore, if he were forced to exercise his right of first refusal on the property pursuant to 11 U.S.C. § 363(i), he lacks the funds to do so and would most likely be unable to borrow the $21,350 necessary to purchase the Trustee's interest, or even $20,000.00 if that were enough. Since his monthly payments on current debt total $2,400.00 (or $28,800.00 per annum) out of a gross salary of $61,000.00 or $62,000.00, leaving at most $33,200.00 per annum ($2,767/monthly to pay income taxes, insurance, and all household and living expenses), his ability to borrow $20,000.00 or more is most unlikely. However, he did offer the Trustee $8,500.00 to buy the Trustee's interest, and he might be able to borrow that much.

21. Factual matters set forth in the Conclusions of Law will stand as additional Findings of Fact. Legal conclusions stated in the Findings of Fact will stand as additional Conclusions of Law.

## CONCLUSIONS OF LAW

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 157(b) and (d) and Local Rule 2.33 of the United States District Court for the Northern District of Illinois, because the claims stated herein arise under Title 11 of the United States Code and are related to the Debtor's case under Chapter 7 of Title 11 of the United States Code. Factual Stip. at 5.

This Adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), (N), and (O). Factual Stip. at 6.

The Trustee seeks to compel a sale pursuant to 11 U.S.C. § 363, which provides in pertinent part:

**11 U.S.C. § 363.  Use, sale, or lease of property**

. . .

(b)(1) The trustee, after notice and a hearing, may . . . sell . . . property of the estate.

. . .

(f) The trustee may sell property under subsection (b) . . . of this section free and clear of any interest in such property of an entity other than the estate, only if—

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

. . .

(h) Notwithstanding subsection (f) of this section, the trustee may sell property under subsection (b) . . . of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—

(1) partition in kind of such property among the estate and such co-owners is impracticable;

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

(4) such property is not used in the production, transmission, or distribution, for sale, or electric energy or of natural or synthetic gas for heat, light, or power.

(i) Before the consummation of a sale of property to which subsection . . . (h) of this section applies . . . a co-owner of such property . . . may purchase such property at the price at which such sale is to be consummated.

(j) After a sale of property to which subsection . . . (h) of this section applies, the trustee shall distribute to . . . the co-owners of such property . . . and to the estate, the proceeds of such sale, less the costs and expenses, not including any compensation of the trustee, of such sale, according to the interests of such . . . co-owners, and of the estate.

(k) At a sale under subsection (b) of this section of property that is subject to . . . an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property.

The Plaintiff Trustee does not contend that he can sell under § 363(f); he relies only on § 363(h).

▉ The property in question is a single family residence occupied solely by Defendant. As such, partition in kind is not practicable among the estate and the co-owner. 11 U.S.C. § 363(h)(1). Where property is a single family residence, there is no practicable manner of partition other than a sale and division of the proceeds. *Griffin,* 123 B.R. at 935; *In re Ivey,* 10 B.R. 230, 232 (Bankr. N.D.Ga.1981). Since it is stipulated that the property involved here is a single family residence, absent evidence to the contrary, the trustee has met his burden of proof as to 11 U.S.C. § 363(h)(1). *Griffin, supra.* Moreover, the property is not used in production, transmission, or distribution for sale of electrical energy or of natural or synthetic gas for heat, light, or power. 11 U.S.C. § 363(h)(4).

▉ Because the property is a single family residence, and the Defendant now occupies the same as his residence, sale of the estate's undivided interest in the property would likely realize significantly less for the estate than sale of such property free of the interest of the co-owner. 11 U.S.C.

§ 363(h)(2). It is generally accepted that sale of a bankruptcy estate's undivided one-half interest will generate substantially less than sale of the entire property interest free of each owner's interest because of the chilling effect that sale of such a limited interest has on prospective purchasers of the property, especially when the co-owner could continue to live on the property as is the case here. *In re Trout,* 146 B.R. 823, 829 (Bankr. D.N.D.1992). It is proper for this Court to take judicial notice of the economic reality of the foregoing under Federal Rule of Evidence 201 (applicable by reason of Bankruptcy Rule 9017) and find § 363(h)(2) to be satisfied, particularly when the property is a single family residence occupied by the Defendant.[1] *Vassilowitch,* 72 B.R. at 808; *Accord, Griffin,* 123 B.R. at 935–6 (Bankr. S.D.Fla.1991). Absent evidence to the contrary, the trustee has met his burden of proof as to 11 U.S.C. § 363(h)(2).

The Trustee's difficulty here lies in meeting his burden under § 363(h)(3) to show that benefit of the requested sale to the estate would outweigh the detriment to Hendricks of such sale.

If the Trustee is not allowed to sell the entire property interest, he will have to negotiate with Mr. Hendricks or someone else to buy the Trustee's undivided one-half interest in order to realize anything for the estate from that interest. The evidence showed that Hendricks offered $8,500.00 for the Trustee's interest, a sum he might be able to borrow; some dividend to creditors would result from that. In contrast, if the property were ordered to be sold, the Trustee may net up to $21,350.00 for the bankruptcy estate before capital gains tax and administrative expenses. The Debtor's schedules (Exhibit 2) list total unsecured claims of $18,675. Accordingly, after payment of Trustee and attorney fees and possible taxes, if any are due, a dividend to unsecured creditors may be possible up to 50% or 75% of claims filed, as contrasted to perhaps 20% or 25% if Hendricks were to pay the offered $8,500.00. Payment of a significant dividend to creditors from the sale of the property is a substantial benefit to the estate. *Vassilowitch,* 72 B.R.

at 808; *Ivey,* 10 B.R. at 233. Payment of a 50% or 75% dividend is certainly more significant than payment of 20% or 25%.

However, the detriment to Defendant Isaac Hendricks would be severe. Despite his equity in the property, he cannot obtain financing to enable him to exercise the right of first refusal, and would suffer hardship in being displaced. He might receive up to $21,350 as a lump sum payment upon sale of the property (if a buyer actually pays the stipulated value, an outcome that is by no means certain, and subject to paying his capital gains tax obligations), minimizing the detriment to him. *See In re Addario,* 53 B.R. 335, 338 (Bankr.D.Mass.1985). However, there is no assurance that what he nets would be enough to purchase a new home because he has too much debt to qualify for the substantial new mortgage loan that he would require.

Moreover, the possibility that Hendricks would receive up to $21,350.00 (before taxes) upon sale of the Property is speculative. One really does not know what the Property would actually sell for based upon market conditions. Moreover, while Hendricks would receive some money were the Property to be sold, he would be losing a good portion of the contributions and payments that he made toward acquisition, maintenance, and retention of that Property.

Defendant relies on *In re Persky,* 893 F.2d 15 (2d Cir.1989), which analyzed § 363. Importantly, that opinion approved consideration by the bankruptcy judge of factors that are not specified in § 363, including calculations of the life expectancy of the parties owning the property, and their respective contributions to the price and expenses of the property. Here, Isaac Hendricks was the sole contributor to purchase of the property, and Linda Gauthreaux did not put any of her money into this property. No monies were paid by her toward the purchase price, acquisition, or maintenance of the property that might have otherwise been available for her creditors. The unsecured creditors of Linda Gauthreaux provided her with credit regardless of her ownership interest in the real estate; that is why they are unsecured.

---

1. While Plaintiff did not ask during trial that Evidence Rule 201 be applied, he did so on his proposed post-trial Findings and Conclusions.

Objections of Hendricks thereto were contained in his post-trial filing and are overruled. Thus, Evidence 201(e) has been complied with.

Moreover, sale of this property would adversely affect Isaac Hendricks' income tax situation by causing him additional costs by not permitting him to deduct each year the real estate tax mortgage and interest payments on said property should he be forced to sell and rent a new home.

The prospects and abilities of Isaac Hendricks to find a new home are also relevant. Based upon the evidence, he would have great difficulty in doing so and would likely be unable to do so. Thus, the loss of this house would cause him irreparable harm through diminishing the quality of his life most seriously. *See In re McCoy,* 92 B.R. 750, 752 (Bankr.N.D.Ohio 1988).

## CONCLUSION

By separate judgment order, the relief requested by the Trustee will be denied. Plaintiff has not met his burden under § 363(h)(3) in that the likely detriment to Isaac Hendricks from sale far outweighs the possible benefit to the estate from such sale.