Creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code. Consequently, when federal bankruptcy law supplies a rule that *298 speaks directly to the right at issue, that rule controls. So it is here: while Massachusetts law defines the parties' rights and obligations under the mortgage (including the duration of the limitations period), section 108(c) of the Bankruptcy Code speaks directly to the enlargement of the statute of limitations periods. Accordingly, section 108(c) controls here.[21]
Shamus Holdings is not the only case to find that § 362(b)(3) is permissive rather than mandatory. See In re 201 Forest Street, LLC , 422 B.R. 888 (1st Cir. B.A.P. 2010) ; In re Essex Construction, LLC , 591 B.R. 630 (Bankr. Md. 2018) (because the current 11 U.S.C. § 362(b)(3) allows a creditor to file a continuation statement does not mean a creditor is required to file the continuation statement); Toranto v. Dzikowski, 380 B.R. 96 (S.D. Fla. 2007) (on its own terms § 362(b)(3) does not require a creditor to do anything, but merely provides that certain actions to maintain or continue a [lien] are exempted from the automatic stay). In contrast, River Parishes points to no other case besides 800 Bourbon Street to hold that § 362(b)(3) creates an obligation to reinscribe or continue a mortgage after the commencement of a bankruptcy case.
800 Bourbon Street also held that § 108(c)(2) applies only to civil court proceedings:
It applies only to civil actions in courts on claims against the debtor ... But it does not appear to apply to other types of acts against the debtor ... that do not involve litigation, such as the filing of documents other than court proceedings.[22]
* * *
The continuation of perfection by Bay Bridge is not a civil court proceeding. Instead it is governed by section 363(b)(3), which specifically allows the maintenance or continuation of a security interest without violating the automatic stay. When pursuant to section 363(b)(3) a party is not stayed from continuing its security interest section 108(c) does not apply.[23]
This proposition the court took from Collier on Bankruptcy.[24] The particular sentence from Collier quoted by the court cites two cases: In re Vassilowitch, 72 B.R. 803 (Bankr. D. Mass. 1987) and In re RDR Systems Development, Inc. , 57 B.R. 540 (Bankr. M.D. La. 1986). Vassilowitch concerned a deadline contained in a state court divorce judgment by which one of the ex-spouses was required to exercise a purchase option. The bankruptcy court in that case opined that it did not believe § 108(c) would apply to such a deadline, but that even if it did assume that § 108(c) applied, there was no showing that the funds required to exercise the purchase option had been tendered with in the 30 days following the expiration of the automatic stay. This holding is clearly not on point with the facts in this case (or in the 800 Bourbon Street case).
RDR Systems concerns a case under Louisiana law similar to the one at issue here, which required reinscription of a statement of assignment. The creditor argued that the time for reinscription was extended by § 108(c), and the court found that this argument was "not persuasive since § 108(c) applies to 'commencing or continuing a civil action in a court other than a bankruptcy court.' The issue at bar is reinscription of a statement of assignment *299 and not the institution of a civil action."[25] The court went on, however, to state:
[T]he Court finds that reinscription was not necessary and that the statement of assignment of accounts receivable is effective for the reasons stated in In re Bond Enterprises, Inc. , 54 B.R. 366 (Bkrtcy., D.N.Mex. 1985). The substance of that conclusion is that the validity of the assignment in the circumstances of the case at bar is tested at the date of filing, not at a subsequent date.
Thus, this second case that Collier cites for the proposition that § 108(c)(2) applies only to civil actions in courts on claims against the debtor expressly holds that the creditor can rely on its position at the date of the filing of the bankruptcy petition and has no need to reinscribe under Louisiana state law if its claim had not yet expired at the time the bankruptcy case was filed.
It is true, as the 800 Bourbon Street court pointed out,[26] that some of these older cases were decided before § 362(b)(3) existed, but the logic is still relevant.[27] In In re Essex Construction, LLC, 591 B.R. 630 (Bankr. D.Md. 2018), which dealt with the filing of continuation statements under the UCC, the court quoted the U.S. First Circuit Court of Appeals: "The debtor's bankruptcy filing was notice to creditors and would be purchasers ... [C]ourts recognized that when the parties are involved in insolvency proceedings, the trustee and existing creditors gain knowledge of the perfected security interest on the date the bankruptcy petition is filed. Consequently, filing a continuation statement served no purpose as to those parties."[28] The court also quoted the First Circuit stating: "Additional notice to the bank in the form of refiling [the continuation statement] was as unnecessary and useless an act as can be imagined. Refiling is intended to protect parties in entirely different circumstances. We see no need to apply the rule here when to do so would give an unjustified advantage to a party."[29]
In the case now before this court, River Parishes was the prospective purchaser involved in a motion to sell assets of the debtor filed with the bankruptcy court. That motion clearly disclosed the mortgage and underlying promissory notes held by BankPlus. River Parishes' principal testified at the hearing on the motion to sell. River Parishes was represented by counsel in the numerous status conferences and hearings leading up to the closing of the sale. There is no way that River Parishes was not aware of the BankPlus mortgages. But now, River Parishes seeks to exploit a perceived loophole through which it might be able to gain an advantage by knocking out BankPlus's mortgage, and thus free up funds from which it might be paid in the event that it is ever adjudged to have a claim against the debtor. This court does not buy the argument and holds that BankPlus was not required to reinscribe its mortgage to maintain its secured status, because § 108(c)(2) tolls the period in which it must reinscribe until 30 days after the stay is lifted in the debtor's bankruptcy case.

Shamus Holdings , 642 F.3d at 267-68.

In re 800 Bourbon Street, LLC, 541 B.R. 616, 628 (Bankr. E.D.La. 2015).

800 Bourbon Street, LLC, 541 B.R. at 629.

Specifically, 2 Collier on Bankruptcy, ¶108.04[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.)

In re RDR Systems Development, Inc. , 57 B.R. 540, 544 (Bankr. M.D. La. 1986).

800 Bourbon Street at FN57.

See also In re Krause , 1996 WL 280794 (E.D.La.)

In re Essex Construction, LLC, 591 B.R. 630, 636-37 (Bankr. D.Md. 2018) quoting In re Halmar Distributors, Inc. , 968 F.2d 121 (1st Cir. 1992).

In re Essex Construction, LLC, 591 B.R. at 636.