In re Mervyn C. PHILLIPS, Jr., Debtor.

David R. Brown, Trustee, Plaintiff,

v.

Mercedes Phillips, Madonna Brown, and First National Bank of LaGrange, Defendants.

Bankruptcy No. 06 B 04158.
Adversary No. 06 A 01180.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Dec. 17, 2007.

Arthur W. Rummler, Esq. & Michael J. Davis, Esq., for Plaintiff.

Brendan Shiller, Esq., Law Office of Brendan Shiller, LLC, Chicago, IL, for Defendants Mercedes Phillips & Madonna Brown.

### MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

Debtors must be just and first pay their creditors before they can be generous to and prefer family members as this adversary proceeding demonstrates. This matter comes before the Court on the amended complaint filed by David R. Brown, the Chapter 7 trustee (the "Trustee") of the bankruptcy estate of Mervyn C. Phillips, Jr. (the "Debtor") against Mercedes Phillips ("Mercedes"), Madonna Brown ("Madonna"), and First National Bank of LaGrange (the "Bank") which seeks to avoid alleged fraudulent conveyances pursuant to 11 U.S.C. §§ 544(b), 550, and 551 and 740 Ill. Comp. Stat. 160/5 and 160/8 of the Illinois Uniform Fraudulent Transfer Act, and sell certain real property pursuant to 11 U.S.C. § 363(h).

In addition, the Trustee seeks a default judgment against Madonna pursuant to Federal Rule of Bankruptcy Procedure 7055(b). For the reasons set forth herein, the Court grants judgment in favor of the Trustee pursuant to Counts I through V of the amended complaint. Under Count I of the amended complaint, the Court holds that the transfer of the Debtor's one-half interest in real property located in Burr Ridge, Illinois to a land trust, of which Mercedes was the sole beneficiary, was a fraudulent transfer under 740 Ill. Comp. Stat. 160/5(a)(1) and (2). As such, the transfer is avoidable under 11 U.S.C. § 544(b)(1) and 740 Ill. Comp. Stat. 160/8(a)(1). Pursuant to 11 U.S.C. § 550(a)(1) and 740 Ill. Comp. Stat. 160/9(b), the Court holds that the Trustee may recover the Debtor's one-half interest in the real property located in Burr Ridge, Illinois from the Bank as trustee of the land trust dated February 14, 2005, and known as trust number 4508, and as the initial transferee. The Court directs the Bank as trustee of the land trust to deed the property back to the Debtor and Mercedes as joint tenants pursuant to 740 Ill. Comp. Stat. 160/8(a)(1), (2), & (3)(C).

With respect to Count II of the amended complaint, the Court holds that the Trustee has demonstrated that the transfer of $823,000 by the Debtor for the payment of the mortgage on the Burr Ridge, Illinois property was a fraudulent conveyance under 740 Ill. Comp. Stat. 160/5(a)(1) and (2). As such, the transfer is avoidable under 11 U.S.C. § 544(b)(1) and 740 Ill. Comp. Stat. 160/8(a)(1). Pursuant to 11 U.S.C. § 550(a) and 740 Ill. Comp. Stat. 160/9(b), the transfer can be recovered for the benefit of the Debtor's estate. The Court awards judgment in the sum of $823,000 to the Trustee and against Mercedes, the entity for whose benefit the transfer was made. In addition, the Court

awards the Trustee prejudgment interest from the date of the filing of the adversary proceeding, June 27, 2006, pursuant to the rate set forth in 28 U.S.C. § 1961. Moreover, the Court assesses the Trustee's taxable costs against Mercedes pursuant to 28 U.S.C. § 1920. The Trustee shall submit a bill therefor pursuant to Local Bankruptcy Rule 7054–1 within thirty days hereof. The Court declines to award the Trustee his attorneys' fees and tax same against Mercedes.

Under Count III of the amended complaint, the Court grants default judgment in favor of the Trustee and against Madonna. The Court holds that the Trustee has demonstrated that the transfer of $290,000 by the Debtor for the purchase of a condominium located in Hinsdale, Illinois, and the transfer of $31,000 for repairs and improvements to that property were fraudulent under 740 ILL. COMP. STAT. 160/5(a)(1) and (2). As such, the transfers are avoidable under 11 U.S.C. § 544(b)(1) and 740 ILL. COMP. STAT. 160/8(a)(1). Pursuant to 11 U.S.C. § 550(a)(1) and 740 ILL. COMP. STAT. 160/9(b), the transfer can be recovered for the benefit of the Debtor's estate. The Court awards judgment in the sum of $321,000 to the Trustee and against Mercedes and Madonna, the entities for whose benefit the transfers were made. Further, the Court awards the Trustee prejudgment interest from the date of the filing of the adversary proceeding, June 27, 2006, pursuant to the rate set forth in 28 U.S.C. § 1961. Moreover, the Court assesses the Trustee's taxable costs against Madonna and Mercedes pursuant to 28 U.S.C. § 1920. The Trustee shall submit a bill therefor pursuant to Local Bankruptcy Rule 7054–1 within thirty days hereof. The Court declines to award the Trustee his attorneys' fees and tax same against Mercedes and Madonna.

Pursuant to Count IV of the amended complaint, the Court holds that the Trustee has demonstrated that the transfer by the Debtor of $63,000 to satisfy a mortgage on property owned by Madonna was fraudulent under 740 ILL. COMP. STAT. 160/5(a)(1) and (2). As such, the transfer is avoidable under 11 U.S.C. § 544(b)(1) and 740 ILL. COMP. STAT. 160/8(a)(1). Pursuant to 11 U.S.C. § 550(a)(1) and 740 ILL. COMP. STAT. 160/9(b), the transfer can be recovered for the benefit of the Debtor's estate. The Court awards a default judgment in the sum of $63,000 to the Trustee and against Madonna, the entity for whose benefit the transfer was made. In addition, the Court awards the Trustee prejudgment interest from the date the adversary proceeding was commenced, June 27, 2006, pursuant to the rate set forth in 28 U.S.C. § 1961. Moreover, the Court assesses the Trustee's taxable costs against Madonna pursuant to 28 U.S.C. § 1920. The Trustee shall submit a bill therefor pursuant to Local Bankruptcy Rule 7054–1 within thirty days hereof. Finally, the Court denies the Trustee's request for an award of attorneys' fees.

Under Count V of the amended complaint, the Court holds that the Trustee has demonstrated all of the necessary elements pursuant 11 U.S.C. § 363(h). Accordingly, the Court authorizes the Trustee to sell the Burr Ridge, Illinois property free and clear of any interest that Mercedes may have in the property, subject to her homestead rights under applicable Illinois law, and her right to an undivided one-half share of the net sale proceeds.

## I. *JURISDICTION AND PROCEDURE*

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the

Northern District of Illinois. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (H), and (O).

## II. *FACTS AND BACKGROUND*

Mercedes is the non-debtor spouse of the Debtor and resides with him at 604 Burr Ridge Club Drive, Burr Ridge, Illinois (the "Burr Ridge Property"). (Am. Compl. ¶ 4.) Madonna is the daughter of the Debtor and Mercedes. (Am.Compl. ¶ 5.) First National Bank of LaGrange is the trustee under a land trust agreement dated February 14, 2005, and known as trust number 4508. (Am.Compl. ¶ 6.)

On November 29, 1988, Mercedes took title to the Burr Ridge Property pursuant to a warranty deed from Arthur and Dolores Kralovec. (Am.Compl. ¶ 7.) On May 10, 1993, Mercedes conveyed the Burr Ridge Property into a land trust, known as trust number 13856, at Standard Bank and Trust Company. (Am.Compl. ¶ 8.) On September 18, 2001, title to the Burr Ridge Property was deeded out of the land trust at Standard Bank and Trust Company and to the Debtor and Mercedes as joint tenants. (Am.Compl.Ex. A.) Thereafter, on September 30, 2002, the Debtor and Mercedes executed a mortgage in favor of ABN AMRO Mortgage Group, Inc. ("ABN AMRO") on the Burr Ridge Property to secure an indebtedness of $700,000. On May 13, 2004, the Debtor and Mercedes refinanced the ABN AMRO mortgage with a new mortgage from ABN AMRO, this time securing an indebtedness of $830,200. (Trustee Ex. J.) On February 14, 2005, the Debtor and Mercedes executed a deed in trust transferring legal ownership of the Burr Ridge Property to First National Bank of LaGrange as trustee under the provisions of a trust agreement dated February 14, 2005, and known as trust number 4508 (the "Land Trust"). (Trustee Exs. H & I.) The sole beneficiary of the Land Trust is Mercedes. (Trustee Ex. I.) Through this transfer of the Burr Ridge Property into the Land Trust, the Debtor divested himself of any ownership interest in the Burr Ridge Property. The Debtor and Mercedes continue to live there. The Debtor testified that the value of the Burr Ridge Property is approximately $1.1–1.3 million.

In 1989, the Debtor purchased an interest in Hillmore Golf Club, Inc. ("Hillmore"), which is located in Wisconsin. The Debtor owned 38% of the shares of stock in Hillmore and its affiliate, HCC Venture, Inc. ("HCC Venture"). On December 20, 1989, the Debtor created the Mervyn C. Phillips, Jr. Revocable Declaration of Trust (the "Revocable Trust"). (Trustee Ex. B.) The Debtor was the trustee of the Revocable Trust. (*Id.*) Thereafter, in September of 1991, the Debtor transferred all of his interest in Hillmore and HCC Venture to the Revocable Trust. (Trustee Ex. A.) On May 15, 1993, the Debtor created the Mervyn C. Phillips, Jr. 1993 Irrevocable Trust (the "Irrevocable Trust"). (Trustee Ex. C.) The Debtor listed certain assets to be part of the Irrevocable Trust res on a document entitled "Schedule of Property." (*Id.*) That list of assets included the Burr Ridge Property and Hillmore. (*Id.*) Nevertheless, neither the title to the Burr Ridge Property nor the Hillmore stock was ever transferred into the Irrevocable Trust. The shares of stock in Hillmore and HCC Venture remain titled in the Revocable Trust. (Trustee Ex. A.) One of the Debtor's daughters, Melissa M. Meyer, was appointed as trustee of the Irrevocable Trust. (Trustee Ex. C.)

In 1996, the Debtor executed loan documents evidencing a borrowing from CIB Bank in the amount of $1,000,000. As part of the collateral pledged for this loan, the Debtor pledged his 38% stock interest in

Hillmore and HCC Venture. The loan went into default and litigation ensued. A judgment was entered in 2004 in favor of CIB Bank and against the Debtor in the approximate sum of $1.2 million.

In 2005, Hillmore was sold for approximately $6,000,000. On March 31, 2005, the Debtor was to receive the sum of $1,415,00 for his 38% interest therein. Instead of these funds going to the Debtor directly, the funds were distributed to his family members at his direction and under his control. From the proceeds of the sale of Hillmore, the Debtor directed that approximately $823,000 be paid to ABN AMRO in satisfaction of the mortgage on the Burr Ridge Property. The Debtor also directed that several transfers be made to his daughter, Madonna. Prior to April 2004, Madonna resided with her husband in their marital home. In the process of a marital dissolution, Madonna sought to remove herself from that marital residence and acquire a new residence. In order to help her accomplish this, the Debtor directed that $63,000 of the Hillmore sale proceeds be given to Madonna to satisfy a mortgage on her marital residence. (Trustee Ex. E.) Further, the Debtor directed that an additional $290,000 be transferred to Madonna to allow her to purchase a condominium located at 5741 South Garfield Avenue, Unit 6, Hinsdale, Illinois (the "Hinsdale Property"). (Trustee Ex. G.) Title to the condominium was placed in the names of both Mercedes and Madonna as joint tenants. (Trustee Ex. F.) In addition, the Debtor directed that another transfer of $31,000 be made for the purpose of making repairs and improvements to the Hinsdale Property. The transfers that the Debtor directed to or for the benefit of Madonna total $384,000.

On April 14, 2006, the Debtor filed a voluntary Chapter 7 bankruptcy petition.

Thereafter, the Trustee was appointed. The Debtor listed on his Schedules a total of $100,900 in personal property. He listed a joint interest in real property valued at $425,000, subject to a lien of $350,000. The Debtor's Schedules E and F reflected debt totaling $2,831,950.48. None of these debts are listed as contingent, disputed, or unliquidated. Under paragraph one in his Statement of Financial Affairs ("SOFA"), the Debtor stated that his income in 2005 was solely derived from his sale of Hillmore with "[i]ncome to be determined." Further, in paragraph ten of the SOFA, the Debtor listed his payment to ABN AMRO in the amount of $823,000 as "transferred from the sale of Hillmore ... to ABN AMRO by [D]ebtor."

On June 27, 2006, the Trustee filed the instant adversary proceeding. An amended complaint was filed on September 29, 2006. In the amended complaint, the Trustee seeks to avoid certain alleged fraudulent conveyances pursuant to 11 U.S.C. §§ 544(b), 550, and 551, and 740 ILL. COMP. STAT. 160/5 and 160/8. Moreover, the Trustee seeks to sell certain real property under 11 U.S.C. § 363(h).

On October 22, 2007, the Trustee filed a motion for default judgment against Madonna pursuant to Federal Rule of Bankruptcy Procedure 7055. After a trial, the Court took this matter, including the motion for default judgment, under advisement. The Court afforded the parties an opportunity to file written supplements to their closing arguments. The Trustee filed a supplement, but the Debtor, Mercedes, and Madonna failed to file anything.

### III. *APPLICABLE STANDARDS*

Section 544(b)(1) of the Bankruptcy Code expressly authorizes a trustee to avoid a transfer voidable under applicable state law and provides in pertinent part as follows:

[T]he trustee may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544(b)(1).

In a matter under § 544(b)(1), the trustee has the rights of an unsecured creditor to avoid transactions that can be avoided by such creditor under state law. *Leibowitz v. Parkway Bank & Trust Co. (In re Image Worldwide, Ltd.)*, 139 F.3d 574, 576–77 (7th Cir.1998). The trustee need not identify the creditor, as long as an unsecured creditor exists. *Id.* at 577; *In re Leonard*, 125 F.3d 543, 544 (7th Cir.1997). The transaction can be avoided completely even if the trustee cannot produce creditors whose liens total more than the value of the property. *Leonard*, 125 F.3d at 544–45.

In the matter at bar, the Trustee has demonstrated, and Mercedes, Madonna, and the Bank do not dispute, that the Debtor has numerous unsecured creditors. Specifically, the Debtor's Schedules E and F listed unsecured debts in the sum of $2,831,950.48. Accordingly, the Trustee may proceed against Mercedes, Madonna, and the Bank under Illinois law.

The applicable state law asserted by the Trustee under § 544(b)(1) is the Illinois Uniform Fraudulent Transfer Act (the "UFTA"). 740 ILL. COMP. STAT. 160/1 *et seq.* Section 160/5(a) of the UFTA addresses claims that arose before or after the alleged fraudulent transfer and provides as follows:

§ 5. (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

740 ILL. COMP. STAT. 160/5(a).

Section 160/5(a) of the UFTA parallels 11 U.S.C. § 548(a)(1).[1] *See Martino v. Edison Worldwide Capital (In re Randy)*, 189 B.R. 425, 443 (Bankr.N.D.Ill.1995). "Because the provisions of the UFTA parallel § 548 of the Bankruptcy Code, findings made under the Bankruptcy Code are applicable to actions under the UFTA." *Levit v. Spatz (In re Spatz)*, 222 B.R. 157, 164 (N.D.Ill.1998). *Accord Image Worldwide*, 139 F.3d at 577 (finding that because the Illinois UFTA is a uniform act which has derived phrases from § 548, the court may look to cases decided under § 548, as well as cases interpreting other states' versions of the UFTA, for assistance).

---

1. An important difference between § 548 and the UFTA is that § 548 authorizes avoidance of transfers made within one year before the bankruptcy filing. 11 U.S.C. § 548(a). Causes of action for fraudulent conveyances can be brought under the UFTA, however, within four years after the transfer was made. 740 ILL. COMP. STAT. 160/10(a). The transfers at issue were made beyond the one year period under the Bankruptcy Code. Hence, the Trustee may proceed only under the Illinois UFTA.

Pursuant to § 160/5(a) of the UFTA, the trustee may recover a transfer made by a debtor under two circumstances: (1) if the debtor made the transfer with actual intent to hinder, delay, or defraud a creditor; or (2) if the debtor did not receive a reasonably equivalent value in exchange for the transfer and was insolvent at the time of the transfer or became insolvent as a result of the transfer. 740 ILL. COMP. STAT. 160/5(a). The UFTA speaks to two types of fraud—"fraud in fact" and "fraud in law." *Scholes v. Lehmann*, 56 F.3d 750, 756–57 (7th Cir.1995).

 "Fraud in fact" or actual fraud pursuant to § 160/5(a)(1) of the UFTA occurs when a debtor transfers property with the intent to hinder, delay or defraud his creditors. *Bay State Milling Co. v. Martin (In re Martin)*, 145 B.R. 933, 946 (Bankr.N.D.Ill.1992). The trustee must prove that there was a specific intent to hinder, delay, or defraud. *Stone v. Ottawa Plant Food, Inc. (In re Hennings Feed & Crop Care, Inc.)*, 365 B.R. 868, 874 (Bankr. C.D.Ill.2007). This Court has held that the movant has the burden of proving all elements of actual fraud under Illinois law by clear and convincing evidence. *Grochocinski v. Knippen (In re Knippen)*, 355 B.R. 710, 732 (Bankr.N.D.Ill.2006), *aff'd*, No. 07 C 1697, 2007 1498906 (N.D.Ill. May 18, 2007); *Grochocinski v. Zeigler (In re Zeigler)*, 320 B.R. 362, 372–73 (Bankr. N.D.Ill.2005) (collecting cases). *Accord Hennings Feed*, 365 B.R. at 874; *Martin*, 145 B.R. at 946. *But see Baldi v. Lynch (In re McCook Metals, L.L.C.)*, 319 B.R. 570, 587 n. 11 (Bankr.N.D.Ill.2005) (declining to decide whether the higher standard of proof would apply to an actual fraud claim under the UFTA).

In determining whether a transfer is made with actual intent to defraud, the UFTA sets forth several factors—also known as the "badges of fraud"—from which an inference of fraudulent intent may be drawn. Section 160/5(b) of the UFTA sets forth the following indicia:

(1) the transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was disclosed or concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

740 ILL. COMP. STAT. 160/5(b).

 When these "badges of fraud" are present in sufficient number, they may give rise to an inference or presumption of fraud. *Knippen*, 355 B.R. at 732–33 (*citing Steel Co. v. Morgan Marshall Indus., Inc.*, 278 Ill.App.3d 241, 214 Ill.Dec. 1029, 662 N.E.2d 595, 602 (Ill.App.Ct.1996)). Under the Federal Rules of Evidence, "a presumption imposes on the party against whom it is directed the burden of going

forward with evidence to rebut or meet the presumption, but does not shift ... the burden ... in the sense of the risk of nonpersuasion, which remains ... upon the party on whom it was originally cast." FED.R.EVID. 301. The presence of seven badges of fraud has been held sufficient to raise a presumption of fraudulent intent. *See Berland v. Mussa (In re Mussa)*, 215 B.R. 158, 170 (Bankr.N.D.Ill.1997).

■ Under the UFTA, an "insider" of an individual debtor includes relatives of the debtor. 740 ILL. COMP. STAT. 160/2(g)(1)(A). A relative, in turn, includes a spouse and a daughter. 740 ILL. COMP. STAT. 160/2(k). While a transfer between family members is not proof per se of fraudulent intent, a familial relationship is weighty proof of such intent. *Mussa*, 215 B.R. at 168 (*citing Reisch v. Bowie*, 367 Ill. 126, 10 N.E.2d 663, 666 (1937) ("In particular, if a voluntary conveyance from a parent to a child results in hindering or delaying creditors, it will be regarded as fraudulent in law, irrespective of the honesty of the grantor's motives.")).

■ Under § 160/5(a)(2) of the UFTA, "fraud in law," on the other hand, does not require any showing of fraudulent intent. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1079 (7th Cir.1997); *Scholes*, 56 F.3d at 757. Rather, fraud is presumed if a debtor transfers property for less than adequate value and is thereby unable to meet his obligations. *Daley v. Chang (In re Joy Recovery Tech. Corp.)*, 286 B.R. 54, 73 (Bankr.N.D.Ill. 2002). Because of its nature, the conveyance is deemed constructively fraudulent. *Daley v. Chang (In re Joy Recovery Tech. Corp.)*, 257 B.R. 253, 268 (Bankr.N.D.Ill. 2001). The trustee has the burden of proving fraud in law by a preponderance of the evidence. *Hennings Feed*, 365 B.R. at 875; *Joy Recovery*, 286 B.R. at 73; *Martin*, 145 B.R. at 946. A different stan-

dard of proof applies to this theory because intent to defraud is presumed when the elements of constructive fraud are established. *Martin*, 145 B.R. at 946. The distinction between "fraud in fact" and "fraud in law" is derived from whether or not there is any consideration for the conveyance at issue. *Knippen*, 355 B.R. at 733 (*citing Second Nat'l Bank of Robinson v. Jones*, 309 Ill.App. 358, 33 N.E.2d 732, 736 (1941)).

■ In order for a trustee to establish that a conveyance is fraudulent in law under § 160/5(a)(2), four elements must be present: (1) the debtor made a voluntary transfer; (2) at the time of the transfer, the debtor had incurred obligations elsewhere; (3) the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer; and (4) after the transfer, the debtor failed to retain sufficient property to pay his indebtedness. *Lease Resolution*, 128 F.3d at 1079.

■ What constitutes "reasonably equivalent value" for purposes of the UFTA has not been defined by Illinois case law. The Illinois Supreme Court, in discussing a prior statute, stated that one of the necessary elements to establish a fraudulent conveyance is that "there must be a transfer made for no or inadequate consideration[.]" *Gendron v. Chi. & N.W. Transp. Co.*, 139 Ill.2d 422, 151 Ill.Dec. 545, 564 N.E.2d 1207, 1215 (1990). *See also Image Worldwide*, 139 F.3d at 577 (discussing Illinois's interpretation of "reasonably equivalent value"); *Regan v. Ivanelli*, 246 Ill.App.3d 798, 187 Ill.Dec. 351, 617 N.E.2d 808, 814 (1993) (*citing Gendron*). In determining whether reasonably equivalent value was received under the UFTA, courts should consider how that phrase has been construed under the

Bankruptcy Code. *Image Worldwide,* 139 F.3d at 577.

■■■■■ The Bankruptcy Code does not define the term "reasonably equivalent value." The Seventh Circuit, however, has stated that the test utilized to determine "reasonably equivalent value" requires the court to determine the value of what was transferred and compare that value to the value the debtor received. *Barber v. Golden Seed Co.,* 129 F.3d 382, 387 (7th Cir. 1997). The determination of "reasonably equivalent value" is not a fixed mathematical formula. *Id.* Section 548(d)(2)(A) of the Code defines "value" as "property, or satisfaction or securing of a present or antecedent debt of the debtor. . . ." 11 U.S.C. § 548(d)(2)(A).

■■■■■ Indeed, determination of "reasonably equivalent value" is a two-step process. *Anand v. Nat'l Republic Bank of Chi.,* 239 B.R. 511, 516–17 (N.D.Ill.1999). A court must first determine whether the debtor received value, and then examine whether the value is reasonably equivalent to what the debtor gave up. *Id.* at 517. The second inquiry, whether what the debtor gave up was reasonably equivalent to what he received, is more difficult. *Id.* "Equivalent value must be measured as of the time of the transfer." *McCook Metals,* 319 B.R. at 589.

■■■■■ Whether "reasonably equivalent value" has been given is a question of fact that depends on the circumstances surrounding the transaction. *Image Worldwide,* 139 F.3d at 576 n. 2. The factors utilized to determine reasonably equivalent value are: (1) whether the value of what was transferred is equal to the value of what was received; (2) the fair market value of what was transferred and received; (3) whether the transaction took place at arm's length; and (4) the good faith of the transferee. *Barber,* 129 F.3d

at 387; *Grigsby v. Carmell (In re Apex Auto. Warehouse, L.P.),* 238 B.R. 758, 773 (Bankr.N.D.Ill.1999). The trustee bears the burden of proof on this issue. *Barber,* 129 F.3d at 387.

■■■ The UFTA provides that "[a] debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." 740 ILL. COMP. STAT. 160/3(a). This definition of insolvency mirrors the balance-sheet test for insolvency under the Bankruptcy Code. 11 U.S.C. § 101(32). The UFTA also provides that "[a] debtor who is generally not paying his debts as they become due is presumed to be insolvent." 740 ILL. COMP. STAT. 160/3(b). The Court has broad discretion when considering evidence to support a finding of insolvency. *Doctors Hosp. of Hyde Park, Inc. v. Desnick (In re Doctors Hosp. of Hyde Park, Inc.),* 360 B.R. 787, 853 (Bankr.N.D.Ill.2007). Insolvency is a question of fact. *Id.*

Once the fraudulent nature of a transaction is established, § 160/9 permits a money judgment against the first transferee of the asset or the person for whose benefit the transfer was made or any subsequent transferee other than a good-faith transferee who took for value from the subsequent transferee. In particular, § 160/9(b) provides as follows:

> (b) Except as otherwise provided in this Section, to the extent a transfer is voidable in an action by a creditor under paragraph (1) of subsection (a) of Section 8, the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (c), or the amount necessary to satisfy the creditor's claim, whichever is less. The judgment may be entered against:
>
> (1) the first transferee of the asset or the person for whose benefit the transfer was made; or

(2) any subsequent transferee other than a good-faith transferee who took for value or from any subsequent transferee.

740 ILL. COMP. STAT. 160/9(b).

When a transfer is avoided under § 544(b), the next step is to look to 11 U.S.C. § 550. Section 550(a) sets forth the parties from whom fraudulent transfers can be recovered, *Fisher v. Hamilton (In re Teknek, LLC)*, 343 B.R. 850, 880 (Bankr.N.D.Ill.2006), and provides as follows:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section ... 544 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made[.]

11 U.S.C. § 550(a)(1).

A court must first make a determination whether the transfer was fraudulent under applicable state law and, therefore, avoidable under § 544(b) before that transfer can be recovered pursuant to § 550(a). Section 550(a) is a secondary cause of action after a trustee has prevailed pursuant to the avoidance sections of the Bankruptcy Code. *Santee v. Nw. Nat'l Bank (In re Mako, Inc.)*, 127 B.R. 471, 473 (Bankr.E.D.Okla.1991). "Section 550(a) stands as a recovery statute only and not as a primary avoidance basis for an action, as it will only survive when coupled with the transfer avoidance sections of the Code." *Id.* Moreover, under § 550(d), a trustee is "entitled to only a single satisfaction under subsection (a) of this section." 11 U.S.C. § 550(d).

Section 550(a) effectively limits actions to only those that benefit the estate. *P.A. Bergner & Co. v. Bank One, Milwaukee, N.A. (In re P.A. Bergner & Co.)*, 140 F.3d 1111, 1118 (7th Cir.1998); *Kmart Corp. v. Intercraft Co. (In re Kmart Corp.)*, 310 B.R. 107, 126 (Bankr. N.D.Ill.2004). Section 550 allows the trustee to recover the entire value of the property transferred, even if it exceeds the debt to the creditor that provided the basis for the action. *Kleven v. Stewart (In re Myers)*, 320 B.R. 667, 670 (Bankr.N.D.Ind. 2005). Even though an action to avoid a transfer may be, and often is, brought in conjunction with an action to recover the property transferred or its value, a court must evaluate the two bases of relief separately. *SKK Liquidation Trust v. Green & Green, LPA (In re Spinnaker Indus., Inc.)*, 328 B.R. 755, 764 (Bankr.S.D.Ohio 2005); *Barber v. McCord Auto Supply, Inc. (In re Pearson Indus., Inc.)*, 178 B.R. 753, 759 (Bankr.C.D.Ill.1995). "Once the whole transfer has been pulled into the estate, the money is distributed according to the priorities established by the Code and the debtor's own commitments." *In re FBN Food Servs., Inc.*, 82 F.3d 1387, 1396 (7th Cir.1996).

## IV. DISCUSSION

### A. Count I of the Amended Complaint

Pursuant to Count I of the amended complaint, the Trustee seeks to avoid the transfer of the Burr Ridge Property from the Debtor and Mercedes into the Land Trust as a fraudulent conveyance. The Trustee contends that the conveyance of the title to the Burr Ridge Property by the Debtor and Mercedes into the Land Trust, whose sole beneficiary is Mercedes, effectively divested the Debtor of a fifty percent interest in the Property. The Trustee alleges that Mercedes gave no consideration or value to the Debtor for the transfer; the Debtor was left insolvent and unable to pay his debts; the transfer

was made with actual intent to hinder, delay, or defraud CIB Bank and other creditors; the Debtor failed to receive a reasonably equivalent value in exchange for the transfer; and at all times subsequent to the transfer, the Debtor has continued to reside in the Burr Ridge Property. The Trustee argues that the Debtor's transfer of his interest in the Burr Ridge Property is avoidable and should be set aside. The Trustee seeks an order directing the Bank, as trustee of the Land Trust, to deed the Burr Ridge Property back to the Debtor and Mercedes as joint tenants.

At the trial, the Debtor and Mercedes conceded that the Trustee proved all of the necessary elements to establish that the transfer of the Burr Ridge Property by the Debtor and Mercedes into the Land Trust was a fraudulent conveyance under § 160/5(a)(1) and (2) of the UFTA. Based on this concession, the Debtor and Mercedes have admitted all of the elements of the Trustee's claims under § 160/5(a)(1) and (2), including that the Debtor acted with intent to hinder, delay, or defraud his creditors. Nevertheless, the Court will discuss the requisite elements of each statutory provision.

### 1. 740 ILL. COMP. STAT. 160/5(a)(1)

First, the Court will address the Trustee's claim that the transfer of the Debtor's interest in the Burr Ridge Property into the Land Trust constitutes fraud in fact or actual fraud pursuant to § 160/5(a)(1) of the UFTA. Under § 160/5(a)(1), a transfer is fraudulent if it was made with "actual intent to hinder, delay, or defraud" creditors. *See* 740 ILL.

COMP. STAT. 160/5(a)(1). There was little evidence adduced at trial regarding the Debtor's intent at the time of the transfer of the Burr Ridge Property into the Land Trust. The Debtor testified that he transferred the Burr Ridge Property into the Land Trust with Mercedes as sole beneficiary because she had originally owned the Property in her name only, and she allowed the Debtor to be placed on the title so that he could use the Property as collateral in order to borrow money. According to the Debtor, Mercedes regularly requested him to transfer title to the Burr Ridge Property back to her pursuant to an oral agreement between them.

Because there is rarely direct evidence of the intent underlying a transfer of property, courts look to circumstantial evidence in determining whether a transfer was intended to hinder, delay, or defraud creditors. At this point, it is helpful to analyze the evidence in terms of the eleven "badges of fraud," many of which are present in this matter.

The transfer of the Burr Ridge Property was made by the Debtor to the Land Trust, with the Debtor's wife, Mercedes, as sole beneficiary of the Land Trust. Hence, the transfer was to an insider. 740 ILL. COMP. STAT. 160/2(g)(1)(A) & (k). The Debtor and Mercedes retained possession of the Burr Ridge Property after the transfer; they continue to reside in the home. The transfer was recorded in DuPage County, Illinois, and was disclosed to the Trustee at the 11 U.S.C. § 341 meeting of creditors. (Trustee Ex. H & K, pp. 31–33.) Thus, the transfer was not concealed.[2] In 2004, less than a year prior to

---

2. The Trustee contends that the transfer of the Burr Ridge Property was concealed by virtue of the transfer into the Land Trust. The Trustee further states that the act of transferring an asset into a land trust may be considered concealing an asset because there is no way

to determine the beneficiary of the land trust. The Trustee fails to cite any case authority for this proposition. The Court disagrees with the Trustee's assertion. The Debtor recorded the deed that transferred his and Mercedes's interests in the Burr Ridge Property to the

the transfer of the Burr Ridge Property into the Land Trust, a judgment was entered against the Debtor and in favor of CIB Bank in the sum of approximately $1.2 million. The Debtor's litigation with CIB Bank begin some time in 2003. The Debtor did not abscond. The Debtor did not conceal assets, but he did remove the Property from his ownership by conveying it to the Land Trust in February of 2005. The transfer occurred shortly after a substantial judgment was entered against the Debtor and in favor of CIB Bank. The Debtor did not transfer the essential assets of a business to a lienor who transferred the assets to an insider of the Debtor.

Next, the Court finds that the value of the consideration received by the Debtor from Mercedes, as the sole beneficiary of the Land Trust, was not reasonably equivalent to the value of his one-half interest in the Burr Ridge Property transferred. Indeed, the Debtor did not receive any consideration from Mercedes for the transfer. When the Debtor executed the deed in trust that conveyed the Burr Ridge Property into the Land Trust, he claimed the transfer "exempt" from the Illinois real estate transfer tax because the actual consideration given for the deed was less than $100.00 (Trustee Ex. H), even though the Burr Ridge Property was valued at approximately $1.1–1.3 million. Based upon this action, the Court finds that the Debtor made a transfer of a considerable amount for less than $100.00, which would not represent a reasonably equivalent value. *See Falcon v. Thomas*, 258 Ill.App.3d 900, 196 Ill.Dec. 244, 629 N.E.2d 789, 795 (1994).

Further, the transfer of the Burr Ridge Property, which was valued by the Debtor at approximately $1.1–1.3 million, was of substantially most of the Debtor's valuable assets. The Debtor listed on his Schedules a total of $100,900 in personal property. He listed a joint interest in real property valued at $425,000, subject to a lien of $350,000. The Debtor's Schedules E and F reflected debt totaling $2,831,950.48. Hence, the sum of the Debtor's debts is greater than all of his assets. Accordingly, based upon these numbers in the Debtor's Schedules and SOFA, the Court finds that the Debtor was insolvent or became insolvent shortly after the transfer of the Burr Ridge Property into the Land Trust.

In sum, there are numerous "badges of fraud" present in this matter. The Court finds that the cumulative effect of the Trustee's direct and circumstantial evidence is probative of the Debtor's actual intent to hinder, delay, or defraud his creditors. Therefore, the Court holds that the Trustee had demonstrated by clear and convincing evidence that the transfer of the Burr Ridge Property into the Land Trust was actually fraudulent under § 160/5(a)(1) of the UFTA. As such, the transfer is avoidable under § 544(b)(1) and 740 ILL. COMP. STAT. 160/8(a)(1). Pursuant to § 550(a)(1) and 740 ILL. COMP. STAT. 160/9(b), the Trustee may recover, for the benefit of the Debtor's estate, the Debtor's one-half interest in the Burr Ridge Property from the Bank as the initial transferee of the transfer.

---

Land Trust. Certainly, this act of recording the deed with the county recorder cannot be construed as concealment. The Court does not agree with the proposition that the transfer of assets into a land trust, ipso facto, constitutes an attempt to conceal those assets. Land trusts have long been used in Illinois for a variety of lawful purposes. It is axiomatic that the beneficiaries of Illinois land trusts are not generally publicly disclosed. This has the practical result of concealment pro tempore until litigation, like this, provides discovery of the identity of such beneficiaries.

### 2. 740 ILL. COMP. STAT. 160/5(a)(2)

▮ Next, the Court must determine whether the transfer of the Burr Ridge Property was constructively fraudulent under § 160/5(a)(2) of the UFTA. Under this alternative theory, the Trustee must show that the Debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer. The Court finds that the Trustee has met all of the elements to establish a cause of action under § 160/5(a)(2). The Debtor made a voluntary transfer of the Burr Ridge Property into the Land Trust with Mercedes as the sole beneficiary. At the time of the transfer, the Debtor had a $1.2 million judgment pending against him and in favor of CIB Bank. Moreover, as previously discussed, the Debtor made the transfer without receiving a reasonably equivalent value from Mercedes. She did not give him anything in the exchange. In addition, the Court finds that after the transfer, the Debtor failed to retain sufficient property to pay his debts. The Burr Ridge Property was valued at $1.1–1.3 million. The Debtor's Schedules reflected debt at the time of the transfer of approximately $2.8 million, personal property worth $100,900, and real property worth $425,000, subject to a lien of $350,000. Hence, as previously discussed, the February 2005 transfer of the Burr Ridge Property rendered the Debtor balance-sheet insolvent and left him with insufficient property to pay his debts. Consequently, the Court holds that the Trustee has also demonstrated that the transfer was constructively fraudulent under § 160/5(a)(2) of the UFTA. As such, the transfer is avoidable under § 544(b)(1) and 740 ILL. COMP. STAT. 160/8(a)(1). Pursuant to § 550(a)(1) and 740 ILL. COMP. STAT. 160/9(b), the Trustee may recover, for the benefit of the Debtor's estate, the Debtor's one-half interest in the Burr Ridge Property from the Bank as the initial transferee of the transfer.

In conclusion, the Court holds that the transfer of the Debtor's interest in the Burr Ridge Property to the Land Trust, of which Mercedes was the sole beneficiary, was a fraudulent transfer § 160/5(a)(1) and (2) of the UFTA. Thus, the transfer is avoidable under § 544(b) and 740 ILL. COMP. STAT. 160/8(a)(1). Pursuant to § 550(a)(1) and 740 ILL. COMP. STAT. 160/9(b), the Trustee can recover the Debtor's one-half interest in the Burr Ridge Property for the benefit of the Debtor's estate from the Bank as the initial transferee of the transfer. The Court directs the Bank as trustee of the Land Trust dated February 14, 2005, and known as trust number 4508, to deed the Burr Ridge Property back to the Debtor and Mercedes as joint tenants under 740 ILL. COMP. STAT. 160/8(a)(1), (2), & (3)(C).

### B. Count II of the Amended Complaint

Under Count II of the amended complaint, the Trustee alleges that the Debtor's satisfaction of the $823,000 mortgage on the Burr Ridge Property held by ABN AMRO constituted a fraudulent conveyance under § 160/5(a)(1) and (2) of the UFTA. Specifically, the Trustee contends that Mercedes gave no consideration or reasonably equivalent value to the Debtor in exchange for the satisfaction of the mortgage. Further, according to the Trustee, the Debtor was rendered insolvent as a result of this and the other challenged transfers and unable to pay his debts. The Trustee avers that Mercedes was either the initial transferee of the mortgage satisfaction, or the person for whose benefit the mortgage satisfaction was made, or an immediate or mediate transferee of an initial transferee.

### 1. 740 ILL. COMP. STAT. 160/5(a)(1)

First, the Court will address the Trustee's claim that the transfer of the

784

$823,000 by the Debtor to pay the mortgage on the Burr Ridge Property constituted fraud in fact or actual fraud pursuant to § 160/5(a)(1) of the UFTA. The initial issue the Court must address is whether the Debtor made a transfer. The Debtor argues that the transfer of the $823,000 was made by the Irrevocable Trust and not by him personally. According to the Debtor, the Irrevocable Trust through the trustee, Melissa M. Meyer, paid the mortgage on the Burr Ridge Property.

■ The Court rejects the Debtor's argument that the Irrevocable Trust made the transfer. The Debtor initially titled his interest in the Hillmore and HCC Venture stock in his name as trustee of the Revocable Trust. Thereafter, the Debtor created the Irrevocable Trust. The Debtor attached to the document that created the Irrevocable Trust a schedule of property that he intended as the res of that Trust. (Trustee Ex. C.) That property included his interest in Hillmore. (*Id.*) However, the Debtor failed to transfer the ownership of the stock certificates to the Irrevocable Trust. Moreover, he did not deliver those stock certificates to Melissa M. Meyer, the trustee of the Irrevocable Trust. This failure on the part of the Debtor is fatal to his argument that the Irrevocable Trust made the transfer rather than him. The Debtor testified that he thought that by listing the property on the schedule attached to the Irrevocable Trust, this was sufficient to place the property into the Irrevocable Trust. The Debtor's understanding, however, did not effectuate a transfer of the shares of stock to the Irrevocable Trust. Indeed, the proceeds from the sale of Hillmore did not become part of the res of the Irrevocable Trust, and thus, the Irrevocable Trust did not make the $823,000 transfer.

■ Pursuant to Illinois law, in order to effectuate the transfer of stock, delivery must be made. *Frierdich v. Mottaz*, 294 F.3d 864, 868 (7th Cir.2002). Article 8 of the Illinois Commercial Code—Investment Securities, 810 ILL. COMP. STAT. 5/8–101 *et seq.*, addresses stock transfers. Section 5/8–301 specifies when delivery occurs in the case of both certificated and uncertificated securities. The subject shares were "certificated securities" under § 5/8–102(4) because they were represented by certificates. (Trustee Ex. A.) Delivery of a certificated security occurs in pertinent part when "the purchaser acquires possession of the security certificate," 810 ILL. COMP. STAT. 5/8–301(a)(1), or "another person ... either acquires possession of the security certificate on behalf of the purchaser, or having previously acquired possession of the certificate, acknowledges that it holds for the purchaser[.]" 810 ILL. COMP. STAT. 5/8–301(a)(2).

The Debtor cannot claim delivery under § 8–301(a)(1) because the Irrevocable Trust, via its trustee, did not acquire possession of the stock certificates. Moreover, there was no delivery under § 8–301(a)(2) because another person did not acquire possession of the stock certificates on behalf of the Irrevocable Trust, and clearly the Debtor did not intend to remain in possession of the stock of behalf of the Irrevocable Trust. The share certificates remained registered in the Debtor's name as trustee of the Revocable Trust and were never endorsed over or assigned by him to the trustee of the Revocable Trust. Rather, the Debtor attempted to transfer his interest in Hillmore to the Irrevocable Trust by listing that asset on the schedule of property that comprised the intended res of the Irrevocable Trust—an attempt that failed under § 8–301(a)(1). Accordingly, the Debtor's argument that the Irrevocable Trust made the transfer at issue fails because the Irrevocable Trust did not

own the shares of stock or the proceeds from the sale of his interest therein.

In sum, the Court finds that the Debtor's failure to deliver the stock certificates to the trustee of the Irrevocable Trust or to cause the reissue of the stock certificates in the name of the Irrevocable Trust results in those shares of stock remaining as previously titled in the Revocable Trust. Accordingly, any interest the Debtor had in Hillmore and HCC Venture and the subsequent proceeds from the sale thereof remained in the Revocable Trust. The stock certificates were titled in the name of the Debtor as trustee of the Revocable Trust, of which he retained complete control, and remained titled in that manner. Therefore, the Debtor's interest in the sale proceeds of Hillmore became property of the estate under 11 U.S.C. § 541(a) upon the filing of his bankruptcy case.

 Turning back to the issue of whether the transfer was made with actual intent to hinder, delay, or defraud creditors, there was little evidence adduced at trial regarding the Debtor's intent at the time of the payment of the mortgage on the Burr Ridge Property. The Debtor testified that Mercedes had originally purchased the Burr Ridge Property with money she received from her mother. The Debtor stated that he asked Mercedes in 2001 to transfer the Burr Ridge Property to both of them jointly so that he could use the Property as collateral in order to borrow money. This transfer was completed and, at that point, the Debtor became an owner of an undivided one-half interest in the Burr Ridge Property with Mercedes until the Property was placed in the Land Trust in early 2005, with Mercedes as the sole beneficiary. According to the Debtor, he paid the mortgage on the Burr Ridge Property with the Hillmore sale proceeds because he had told Mercedes that he would do so.

This being the only evidence regarding the Debtor's intent, the Court must look to the badges of fraud in order to determine whether the transfer was intended to hinder, delay, or defraud creditors. First, the transfer was made to the mortgage holder, ABN AMRO directly, not to Mercedes. Even though ABN AMRO is not an insider, Mercedes, the Debtor's wife, is an insider. 740 ILL. COMP. STAT. 160/2(g)(1)(A) & (k). She benefitted from the transfer because her equity in the Burr Ridge Property increased when the mortgage was satisfied. The Debtor did not retain possession or control of the $823,000 after the transfer. There was no evidence adduced regarding whether the transfer was either disclosed or concealed. The Debtor made the transfer in March of 2005 shortly after a substantial judgment was entered in favor of CIB Bank. The transfer was of substantially most of the Debtor's valuable assets. There was no evidence that the Debtor absconded or removed or concealed assets.

Moreover, the Court finds that the Debtor did not receive consideration for the transfer that was reasonably equivalent to the value of the transfer. The Debtor was not on the title to the Burr Ridge Property. Rather, Mercedes was the sole owner. Thus, the Debtor did not receive a benefit for his payment of that mortgage. Further, as discussed *supra* in Count I, at the time of the transfer, the Debtor was insolvent or became insolvent shortly after the transfer was made. As set forth in the Debtor's Schedules, the sum of the Debtor's debts was greater than all of his assets. Finally, there was no evidence that the Debtor transferred the essential assets of a business to a lienor who transferred the assets to an insider of the Debtor.

In sum, there are numerous "badges of fraud" present in this matter. The Court

finds that the cumulative effect of the Trustee's direct and circumstantial evidence is probative of the Debtor's intent to hinder, delay, or defraud his creditors. Therefore, the Court holds that the Trustee had demonstrated that the transfer of the $823,000 to satisfy the mortgage on the Burr Ridge Property was actually fraudulent under § 160/5(a)(1) of the UFTA. As such, the transfer is avoidable under § 544(b)(1) and 740 ILL. COMP. STAT. 160/8(a)(1).

The Court raised the issue of whether pursuant to § 550(a)(1), the Trustee can properly seek recovery of the $823,000 from Mercedes because she was not the initial transferee of the money. Rather, ABN AMRO, the mortgage holder, received the $823,000 and was the initial transferee. Section 550(a) does not require a plaintiff in a fraudulent conveyance action to pursue the initial transferee prior to " 'continuing with avoidance actions down the line of transfers.' " *IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689, 706 (11th Cir. 2005). "Section 550(a) does not mandate a plaintiff to first pursue recovery against the initial transferee and successfully avoid all prior transfers against a mediate transferee." *Id.* at 708 Accordingly, § 550(a)(1) allows the Trustee to pursue either the initial transferee or the entity for whose benefit the transfer was made. Mercedes was the latter and the payment of the mortgage on the Burr Ridge Property enhanced greatly her equity in the Property by the amount of the satisfied mortgage lien released.

The case law addressing the status of the transfer beneficiary is sparse. *McCook*, 319 B.R. at 590. The Seventh Circuit Court of Appeals in *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890 (7th Cir.1988), examined a trustee's recovery against a benefi-

cial transferee under § 550(a), and noted several factors to consider: (1) whether, for a person to be a transfer beneficiary, the transferor must have intended to confer a benefit on that person; (2) whether, to be a transfer beneficiary, a person must have actually received a benefit; and (3) if so, whether the benefit must be quantifiable. *Id.* at 895. One court further distilled the *Bonded Financial* factors for courts to consider: "[f]ollowing the *Bonded Financial* description and other relevant considerations, it appears that transfer beneficiary status depends on three aspects of the 'benefit': (1) it must actually have been received by the beneficiary; (2) it must be quantifiable; and (3) it must be accessible to the beneficiary." *McCook*, 319 B.R. at 590.

The Court finds that the benefit of the Debtor's payment to ABN AMRO was actually received by Mercedes. The Debtor had previously transferred his interest in the Burr Ridge Property to the Land Trust with Mercedes as the sole beneficiary. The Debtor did not retain any interest in the title to the Property and thus did not benefit in the Property itself from the payment of the mortgage on the Property. The benefit to Mercedes was the satisfaction of the mortgage and note held by ABN AMRO and her corresponding increase in her equity position in the Burr Ridge Property. Indeed, Mercedes received a dollar for dollar increase in her equity position in the Burr Ridge Property as a result of the Debtor's transfer. This dollar for dollar increase in Mercedes' equity represents the quantifiable aspect of the transfer in the sum of $823,000. Further, the benefit received by Mercedes is accessible to her. As the sole beneficiary of the Land Trust, she presently controls the Burr Ridge Property. With the satisfaction of the mortgage and the increase in her equity position, Mercedes could sell

the Burr Ridge Property and reap the benefit of the increase in her equity position. Therefore, the Court holds that the Trustee may recover the $823,000 transfer from Mercedes, the entity for whose benefit the transfer was made, for the benefit of the Debtor's estate under § 550(a)(1) as well as § 160/9(b) of the UFTA.

Next, the Trustee seeks an equitable lien in the Burr Ridge Property in the sum of $823,000. The Trustee fails to cite any supporting authority for the granting of an equitable lien. His failure to do so results in the forfeiture of the point. *See LINC Fin. Corp. v. Onwuteaka,* 129 F.3d 917, 921 (7th Cir.1997); *Pelfresne v. Vill. of Williams Bay,* 917 F.2d 1017, 1023 (7th Cir.1990). The Trustee can record the money judgment he is awarded here against the Burr Ridge Property which thereby creates a lien on the Property. *See* 735 ILL. COMP. STAT. 5/12–502.

In sum, the Court holds that the Trustee has demonstrated that the transfer was constructively fraudulent under § 160/5(a)(1) of the UFTA. As such, the transfer is avoidable under § 544(b)(1) and 740 ILL. COMP. STAT. 160/8(a)(1). Pursuant to § 550(a)(1) and 740 ILL. COMP. STAT. 160/9(b), the transfer can be recovered for the benefit of the Debtor's estate. The Court awards judgment in the sum of $823,000 to the Trustee and against Mercedes, the entity for whose benefit the transfer was made.

### 2. 740 ILL. COMP. STAT. 160/5(a)(2)

 Further, the Court holds that the transfer of the $823,000 to pay the mortgage on the Burr Ridge Property was constructively fraudulent under § 160/5(a)(2) of the UFTA. The Trustee has met all of the requisite elements to establish a claim under § 160/5(a)(2). The Debtor made the voluntary transfer of $823,000 on March 31, 2005, at a time when he had a pending judgment debt to CIB Bank in the sum of $1.2 million. Furthermore, the Debtor made the transfer without receiving a reasonably equivalent value. Indeed, the Debtor received no value at all in exchange for the payment of the mortgage. To the contrary, Mercedes received benefit in that the retirement of the mortgage debt on the Burr Ridge Property increased the equity she had in that asset.

In addition, as set forth *supra* in Count I, the Court finds that after the transfer, the Debtor failed to retain sufficient property to pay his debts. The Debtor's Schedules reflected debt at the time of the transfer of approximately $2.8 million, personal property worth $100,900, and real property worth $425,000, subject to a lien of $350,000. Hence, the Debtor's payment of the mortgage on the Burr Ridge Property in March of 2005, rendered him balance-sheet insolvent and left him with insufficient property to pay his debts.

Accordingly, the Court holds that the Trustee has demonstrated that the transfer was constructively fraudulent under § 160/5(a)(2) of the UFTA. As such, the transfer is avoidable under § 544(b)(1) and 740 ILL. COMP. STAT. 160/8(a)(1). Pursuant to § 550(a) and 740 ILL. COMP. STAT. 160/9(b), the transfer can be recovered for the benefit of the Debtor's estate. The Court awards judgment to the Trustee in the sum of $823,000 and against Mercedes, the entity for whose benefit the transfer was made.

### 3. Interest

 The Trustee made a demand in the amended complaint for postjudgment interest. "[A] prevailing plaintiff in federal court is automatically entitled to postjudgment interest." *Miller v. Artistic Cleaners,* 153 F.3d 781, 785 (7th Cir.1998) (*citing* 28 U.S.C. § 1961(a)). The interest

is calculated from the date of the entry of the judgment. (*Id.*) The Court assumes that the Trustee intended to request prejudgment interest rather than post-judgment interest. The Bankruptcy Code does not specifically provide for the award of prejudgment interest. Nevertheless, the Seventh Circuit Court of Appeals has recognized that prejudgment interest should be included as a component to compensation for victims of federal law violations. *Fritcher v. Health Care Serv. Corp.*, 301 F.3d 811, 820 (7th Cir.2002). The purpose of allowing prejudgment interest is compensatory, not punitive; such interest is granted to make the prevailing party whole. *See In re Milwaukee Cheese Wis., Inc.*, 112 F.3d 845, 849 (7th Cir.1997). Not only must the award of prejudgment interest be compensatory, it is also within a court's discretion to determine if such award is equitable. *Id.* ("Discretion must be exercised according to law, which means that prejudgment interest should be awarded unless there is a sound reason not to do so."). "Discretion is not, however, authorization to decide who deserves the money more." *Id.* In other words, prejudgment interest "is simply an ingredient of full compensation," and should not be considered a windfall. *P.A. Bergner & Co. v. Bank One, Milwaukee, N.A. (In re P.A. Bergner & Co.)*, 140 F.3d 1111, 1123 (7th Cir.1998).

▪ Prejudgment interest has been awarded pursuant to the rate set forth in 28 U.S.C. § 1961 from the date the adversary proceeding was filed. *Gray v. Travelers Ins. Co. (In re Neponset River Paper Co.)*, 219 B.R. 918, 921 (Bankr.D.Mass. 1998), *aff'd*, 231 B.R. 829 (1st Cir. BAP 1999); *Floyd v. Dunson (In re Rodriguez)*, 209 B.R. 424, 434 (Bankr.S.D.Tex.1997); *Carmel v. River Bank Am. (In re FBN Food Servs., Inc.)*, 175 B.R. 671, 691 (Bankr.N.D.Ill.1994), *aff'd*, 185 B.R. 265

(N.D.Ill.1995), *aff'd in part, remanded in part on other grounds*, 82 F.3d 1387 (7th Cir.1996); *Barber v. Lebo (In re Indus. & Mun. Eng'g, Inc.)*, 127 B.R. 848, 851 (Bankr.C.D.Ill.1990). The award of interest prior to the date of demand would not be appropriate "because the transfer is not improper in any respect at the time it occurs." *Nelson Co. v. Amquip Corp. (In re Nelson Co.)*, 117 B.R. 813, 818 (Bankr. E.D.Pa.1990), *aff'd*, 128 B.R. 930 (E.D.Pa. 1991), *aff'd*, 959 F.2d 1260 (3d Cir.1992). Indeed, "[t]he date from which prejudgment interest accrues is the date of demand for return of transferred property, or the date of the filing of the adversary proceeding seeking recovery of the property, whichever is earlier." *Manning v. Wallace (In re First Fin. Assocs., Inc.)*, 371 B.R. 877, 921 (Bankr.N.D.Ind.2007).

The Trustee argues that because interest is intended to compensate for the time value of money, interest should begin to run from the date the Debtor made the transfer. In support of his position, the Trustee quotes from a hearing held on August 25, 2005, in a matter where Judge Eugene Wedoff calculated interest on the day after the transfer. The Trustee does not cite to any other authority for such proposition. His failure to do so results in the forfeiture of the point. *See LINC Fin.*, 129 F.3d at 921; *Pelfresne*, 917 F.2d at 1023. The Court has previously held that interest should be calculated from the date the adversary proceeding is filed, *Grochocinski v. Reliant Interactive Media Corp. (In re General Search.com)*, 322 B.R. 836, 851 (Bankr.N.D.Ill.2005); *Krol v. Wilcek (In re H. King & Assocs.)*, 295 B.R. 246, 290–91 (Bankr.N.D.Ill.2003), and will continue to follow that position absent clear direction from the Seventh Circuit Court of Appeals or Congress.

The Court exercises it discretion and awards the Trustee prejudgment interest

in order to compensate the Debtor's bankruptcy estate. The Trustee is entitled to prejudgment interest from the date the adversary proceeding was commenced, June 27, 2006, pursuant to the rate set forth in 28 U.S.C. § 1961.

### 4. Attorneys' Fees

Next, the Trustee makes a request for attorneys' fees. The Trustee has failed to cite any provision in the Bankruptcy Code that authorizes the award of his attorneys' fees. Section 544 of the Code, one of the provisions upon which the Trustee relies in this adversary proceeding in support of his request to avoid the payment of the mortgage, does not specifically authorize the Court to award attorneys' fees. The Court also avoided the mortgage payoff under Illinois law. Thus, the Court must also look to Illinois law to determine whether a basis exists for such an award. On this point, Illinois law is clear. Illinois follows the "American Rule" which provides that attorneys' fees are not available to a prevailing party absent statutory authority or an express contractual provision between the parties. *Morris B. Chapman & Assocs., Ltd. v. Kitzman*, 193 Ill.2d 560, 251 Ill.Dec. 141, 739 N.E.2d 1263, 1271 (2000); *Negro Nest, LLC v. Mid–N. Mgmt., Inc.*, 362 Ill.App.3d 640, 298 Ill.Dec. 436, 839 N.E.2d 1083, 1085 (2005). *See also Midwest Grain Prods. of Ill. v. Productization, Inc.*, 228 F.3d 784, 792 (7th Cir.2000) (stating that Illinois follows the American Rule under which parties bear their own legal costs). The Trustee has failed to point to specific statutory authority, an express contractual provision, or a court rule that would provide for the award of his attorneys' fees. Absent such a showing, the Court denies the Trustee's request.

### 5. Costs

Finally, without citation to any statute or case authority, the Trustee seeks the award of his court costs. Pursuant to Federal Rule of Bankruptcy Procedure 7054(b), "[t]he court may allow costs to the prevailing party except when a statute of the United States or these rules otherwise provides." FED. R. BANKR.P. 7054(b). The Court is unaware of any statute or Bankruptcy Rule that would not provide for the allowance of costs to the Trustee. Pursuant to 28 U.S.C. § 1920, a court may award a prevailing party taxable costs. That statute provides as follows:

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

28 U.S.C. § 1920.

The Court has broad discretion to determine whether and to what extent to award costs to prevailing parties. *See Barber v. Ruth*, 7 F.3d 636, 644 (7th Cir. 1993). There is a strong presumption favoring the award of costs to the prevailing party. *Weeks v. Samsung Heavy Indus.*

*Co., Ltd.*, 126 F.3d 926, 945 (7th Cir.1997). Allowable costs, however, are limited to the categories in § 1920, and expenses that are not authorized by statute must be borne by the party incurring them. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987). The losing party must satisfy a heavy burden when asserting that he should be excused from paying costs, and must affirmatively establish that the costs fall outside the parameters of § 1920, or that the costs were not reasonably necessary to the litigator, or that the losing party is unable to pay. *Gordon v. Castle Oldsmobile & Honda, Inc.*, 157 F.R.D. 438, 440 (N.D.Ill.1994) (*citing Muslin v. Frelinghuysen Livestock Managers, Inc.*, 777 F.2d 1230, 1236 (7th Cir.1985)).

■ Mercedes did not introduce any evidence to overcome the presumption in favor of awarding costs to the Trustee. Therefore, the Court assesses the Trustee's taxable costs against Mercedes pursuant to 28 U.S.C. § 1920. The Trustee shall submit a bill therefor pursuant to Local Bankruptcy Rule 7054–1 within thirty days hereof.

In sum, the Court holds that the Debtor's payment of the mortgage on the Burr Ridge Property was a fraudulent transfer under § 160/5(a)(1) and (2) of the UFTA. Thus, the transfer is avoidable under § 544(b)(1) and 740 Ill. Comp. Stat. 160/8(a)(1). Pursuant to § 550(a)(1) and 740 Ill. Comp. Stat. 160/9(b), the transfer can be recovered for the benefit of the Debtor's estate. The Court grants judgment in the sum of 823,000 in favor of the Trustee and against Mercedes, the entity for whose benefit the transfer was made. In addition, the Court awards the Trustee prejudgment interest from the date of the filing of the adversary proceeding, June 27, 2006, pursuant to the rate set forth in 28 U.S.C. § 1961. Further, the Court assesses the Trustee's taxable costs against Mercedes under 28 U.S.C. § 1920. The Trustee shall submit a bill therefor pursuant to Local Bankruptcy Rule 7054–1 within thirty days hereof.

## C. Count III of the Amended Complaint

Under Count III of the amended complaint, the Trustee seeks to avoid two transfers the Debtor made for the benefit of Mercedes and Madonna: (1) $290,000 for the purchase of the Hinsdale Property; and (2) $31,000 for repairs and improvements made to the Hinsdale Property. According to the Trustee, neither Mercedes nor Madonna gave any consideration or value to the Debtor for these transfers, and the Debtor did not receive a reasonably equivalent value in exchange for such transfers. The Trustee argues that as a result of these payments, the Debtor was rendered insolvent and unable to pay his debts. The Trustee contends these transfers were made with actual intent to hinder, delay, or defraud CIB Bank and other creditors.

The Trustee seeks a default judgment against Madonna pursuant to Federal Rule of Bankruptcy Procedure 7055. (Docket No. 79.) The basis of that motion stems from the following facts. On October 20, 2006, Madonna's attorney, Adam Lysinski, filed an answer and affirmative defenses to the amended complaint filed by the Trustee. (Docket No. 19.) Thereafter, on November 3, 2006, the Court issued a Preliminary Pretrial Order that required the filing of a pretrial statement by January 24, 2007. (Docket No. 24.) Further, a pretrial conference was set for February 9, 2007. (*Id.*) Madonna failed to file a pretrial statement and failed to appear at the pretrial conference. As a result, on February 15, 2007, the Court entered an Order striking all of Madonna's

pleadings and finding her in default. (Docket No. 29.) On February 9, 2007, the Court issued a Final Pretrial Order wherein it set this adversary proceeding for trial on October 29, 2007. (Docket No. 32.) The Final Pretrial Order required the parties to file exhibit and witness lists by October 15, 2007. (*Id.*) Madonna failed to comply with the Court's Final Pretrial Order. At the trial, Madonna and her original attorney both failed to appear. Counsel for Mercedes filed an appearance on Madonna's behalf at trial.

As a result of the Court striking Madonna's answer and affirmative defenses, she has admitted the allegations in the Trustee's amended complaint. Further, all of the Trustee's exhibits have been admitted into evidence without objection. Pursuant to Federal Rule of Bankruptcy Procedure 9017, which incorporates Federal Rule of Civil Procedure 43, the Trustee submitted an affidavit in lieu of his testimony. (Mot. for Entry of Default Judgment, Ex. H.) The Court finds, based on Madonna's admission of the allegations in the amended complaint, the Trustee's exhibits, and the Trustee's affidavit, that the Trustee is entitled to a default judgment against Madonna under Count III of the amended complaint. Nevertheless, the Court will address the elements of the Trustee's claims against both Madonna and Mercedes.

### 1. 740 ILL. COMP. STAT. 160/5(a)(1)

The Court holds that the $290,000 and $31,000 transfers made by the Debtor for the benefit of Madonna and Mercedes constituted fraud in fact or actual fraud pursuant to § 160/5(a)(1) of the UFTA.

There was no evidence adduced at trial by either the Trustee, the Debtor, or Mercedes regarding the Debtor's intent at the time of the transfers. Hence, the Court must look to the badges of fraud in order to determine whether the transfers were intended to hinder, delay, or defraud creditors. First, the transfers were made to or for the benefit of Mercedes and Madonna. They are the Debtor's wife and daughter and, thus, insiders. *See* 740 ILL. COMP. STAT. 160/2(g)(1)(A) & (k). The evidence was not clear whether the transfers were made directly to Madonna and Mercedes or to some other entity for their benefit. Regardless, they benefitted from these transfers because the Hinsdale Property was titled in their names and the repairs and improvements made to the Hinsdale Property increased the value of that Property for their benefit. The Debtor did not retain possession or control of the $321,000 after the transfers. There was no evidence that the transfers were either disclosed or concealed. The Debtor made the transfers in March of 2005, shortly after a substantial judgment was entered in favor of CIB Bank. As detailed *supra* under Count I of the amended complaint, the transfers were of substantially most of the Debtor's assets. There was no evidence that the Debtor absconded or removed or concealed these assets.

Moreover, the Debtor did not receive consideration for the transfer of the $290,000 that was reasonably equivalent to the value of the transfer. The Debtor is not an owner of the Hinsdale Property. Rather, Mercedes and Madonna own the Hinsdale Property in joint tenancy. Furthermore, there was no consideration received by the Debtor for the $31,000 he transferred for the repairs and improvements to the Hinsdale Property. Thus, the Debtor did not receive any economic benefit for his transfers. Additionally, as discussed *supra* in Count I, at the time of the transfers, the Debtor was insolvent or became insolvent shortly after the transfers were made. Finally, there was no evidence that the Debtor transferred the

essential assets of the business to a lienor who transferred the assets to an insider of the Debtor.

In sum, there are numerous "badges of fraud" present in this matter. The Court finds that the cumulative effect of the Trustee's direct and circumstantial evidence is probative of the Debtor's intent to hinder, delay, or defraud his creditors. Therefore, the Court holds that the Trustee has demonstrated that the transfer of $290,000 as a down payment for the purchase of the Hinsdale Property and the transfer of $31,000 for repairs and improvements to the Hinsdale Property were actually fraudulent under § 160/5(a)(1) of the UFTA. As such, the transfers are avoidable under § 544(b)(1) and 740 ILL. COMP. STAT. 160/8(a)(1). Pursuant to § 550(a)(1) and 740 ILL. COMP. STAT. 160/9(b), the transfers can be recovered for the benefit of the Debtor's estate. The Court awards judgment in the sum of $321,000 to the Trustee and against Mercedes and Madonna, the entities for whose benefit the transfers were made.

Next, the Trustee seeks an equitable lien in the Hinsdale Property in the sum of $321,000. The Trustee fails to cite any supporting authority for the granting of an equitable lien. His failure to do so results in the forfeiture of the point. *See LINC Fin.*, 129 F.3d at 921; *Pelfresne*, 917 F.2d at 1023. The Trustee can record the money judgment he is awarded here against the Hinsdale Property which thereby creates a judgment lien on the Property. 735 ILL. COMP. STAT. 5/12–502.

### 2. 740 ILL. COMP. STAT. 160/5(a)(2)

Further, the Court holds that the transfers were constructively fraudulent under § 160/5(a)(2) of the UFTA. The Trustee has met all of the requisite elements to establish a claim under § 160/5(a)(2). The Debtor made the voluntary transfers of $290,000 and $31,000 on March 31, 2005, at a time when he had a pending judgment debt to CIB Bank in the sum of $1.2 million. Furthermore, the Debtor made the transfers without receiving a reasonably equivalent value. Indeed, the Debtor received no value at all in exchange for the down payment on the Hinsdale Property and the repairs thereto. To the contrary, Mercedes and Madonna received the benefit in that they are the record owners of the Hinsdale Property. Any improvements or repairs that were made to the Hinsdale Property inured to their benefit, not to the benefit of the Debtor.

In addition, as set forth *supra* in Count I, the Court finds that after the transfers, the Debtor failed to retain sufficient property to pay his debts. The Debtor's Schedules reflected debt shortly after the time of the transfers of approximately $2.8 million, personal property worth $100,900, and real property worth $425,000, subject to a lien of $350,000. Hence, the Debtor's transfer of $290,000 and $31,000 rendered him balance-sheet insolvent and left him with insufficient property to pay his debts.

Accordingly, the Court holds that the Trustee has demonstrated that the transfers were constructively fraudulent under § 160/5(a)(2) of the UFTA. As such, the transfers are avoidable under § 544(b)(1) and 740 ILL. COMP. STAT. 160/8(a)(1). Pursuant to § 550(a)(1) and 740 ILL. COMP. STAT. 160/9(b), the transfers can be recovered for the benefit of the Debtor's estate. The Court awards judgment in the sum of $321,000 to the Trustee and against Mercedes and Madonna, the entities for whose benefit the transfers were made.

In addition, for the reasons set forth *supra* in Count II, the Court exercises it discretion and awards the Trustee prejudgment interest in order to compensate the bankruptcy estate. The Trustee is entitled to prejudgment interest from the

date the adversary proceeding was commenced, June 27, 2006, pursuant to the rate set forth in 28 U.S.C. § 1961. The Court denies the Trustee's request for an award of attorneys' fees for the reasons previously stated in Count II. Finally, for the reasons articulated previously, the Court assesses the Trustee's taxable costs against Mercedes and Madonna pursuant to 28 U.S.C. § 1920. The Trustee shall submit a bill therefor pursuant to Local Bankruptcy Rule 7054–1 within thirty days hereof.

### D. Count IV of the Amended Complaint

Under Count IV of the amended complaint, the Trustee seeks to avoid the $63,000 transfer the Debtor made to satisfy the mortgage on Madonna's marital residence. The Trustee maintains that Madonna did not provide any consideration or value to the Debtor for this transfer, and the Debtor failed to receive a reasonably equivalent value in exchange for such transfer. According to the Trustee, as a result of this transfer and the others, the Debtor was rendered insolvent and unable to pay his debts. The Trustee contends that the Debtor made this transfer with actual intent to hinder, delay, or defraud CIB Bank and other creditors. The Trustee seeks a default judgment against Madonna pursuant to Federal Rule of Bankruptcy Procedure 7055.

For the reasons set forth *supra* in Count III, the Court enters a default judgment against Madonna pursuant to Count IV of the amended complaint. Nevertheless, the Court will address the elements of the Trustee's claims against Madonna.

#### 1. 740 ILL. COMP. STAT. 160/5(a)(1)

The Court holds that the $63,000 transfer made by the Debtor to or for the benefit of Madonna constituted fraud in fact or actual fraud pursuant to § 160/5(a)(1) of the UFTA. There was no evidence adduced at trial regarding the Debtor's intent at the time of the transfer. Hence, the Court must look to the badges of fraud in order to determine whether the transfer was intended to hinder, delay, or defraud creditors. First, the transfer was made to or for the benefit of Madonna. She is the Debtor's daughter and, thus, an insider. *See* 740 ILL. COMP. STAT. 160/2(g)(1)(A) & (k). The evidence was not clear whether the transfer was made directly to Madonna or to the holder of the mortgage on Madonna's marital residence. Regardless, Madonna benefitted from this transfer because the mortgage obligation on the condominium was satisfied and her equity in that property increased. The Debtor did not retain possession or control of the $63,000 after the transfer. There was no evidence that the transfer was either disclosed or concealed. The Debtor made the transfer in March of 2005 shortly after a substantial judgment was entered in favor of CIB Bank. As detailed previously under Count I, the transfer was of substantially most of the Debtor's assets. There was no evidence that the Debtor absconded or removed or concealed assets.

Moreover, the Debtor did not receive consideration for the transfer of the $63,000 that was reasonably equivalent to the value of the transfer. The Debtor was not named on the title to the condominium. Rather, Madonna and her husband were the owners of record. Thus, the Debtor did not receive a benefit for his transfer. Further, as discussed *supra* in Count I, at the time of the transfer, the Debtor was insolvent or became insolvent shortly after the transfer was made. Finally, there was no evidence that the Debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the Debtor.

In sum, there are numerous "badges of fraud" present in this matter. The Court finds that the cumulative effect of the Trustee's direct and circumstantial evidence is probative of the Debtor's intent to hinder, delay, or defraud his creditors. Therefore, the Court holds that the Trustee has demonstrated that the transfer of the $63,000 to satisfy the mortgage on Madonna's condominium she shared with her estranged husband was actually fraudulent under § 160/5(a)(1) of the UFTA. As such, the transfer is avoidable under § 544(b)(1) and 740 ILL. COMP. STAT. 160/8(a)(1). Pursuant to § 550(a)(1) and 740 ILL. COMP. STAT. 160/9(b), the transfer can be recovered for the benefit of the Debtor's estate. The Court awards a default judgment in the sum of $63,000 to the Trustee and against Madonna, the entity for whose benefit the transfer was made.

### 2. 740 ILL. COMP. STAT. 160/5(a)(2)

Further, the Court holds that the transfer was constructively fraudulent under § 160/5(a)(2) of the UFTA. The Trustee has met all of the requisite elements to establish a claim under § 160/5(a)(2). The Debtor made a voluntary transfer of $63,000 on March 31, 2005, at a time when he had a pending judgment debt to CIB Bank in the sum of $1.2 million. Furthermore, the Debtor made the transfer without receiving a reasonably equivalent value. Indeed, the Debtor received no value at all in exchange for the payment of the mortgage on Madonna's marital residence. To the contrary, Madonna received the benefit in that she was the record owner of the property.

In addition, as set forth *supra* in Count I, the Court finds that after the transfer, the Debtor failed to retain sufficient property to pay his debts. The Debtor's Schedules reflected debt at the time of the transfers of approximately $2.8 million, personal property worth $100,900, and real property worth $425,000, subject to a lien of $350,000. Hence, the Debtor's payment of $63,000 rendered him balance-sheet insolvent and left him with insufficient property to pay his debts.

Accordingly, the Court holds that the Trustee has demonstrated that the transfer was constructively fraudulent under § 160/5(a)(2) of the UFTA. As such, the transfer is avoidable under § 544(b)(1) and 740 ILL. COMP. STAT. 160/8(a)(1). Pursuant to § 550(a)(1) and 740 ILL. COMP. STAT. 160/9(b), the transfer can be recovered for the benefit of the Debtor's estate. The Court awards a default judgment in the sum of $63,000 to the Trustee and against Madonna, the entity for whose benefit the transfer was made.

In addition, for the reasons set forth *supra* in Count II, the Court exercises it discretion and awards the Trustee prejudgment interest in order to compensate the bankruptcy estate. The Trustee is entitled to prejudgment interest from the date the adversary proceeding was commenced, June 27, 2006, pursuant to the rate set forth in 28 U.S.C. § 1961. The Court denies the Trustee's request for an award of attorneys' fees for the reasons previously stated in Count II. Finally, the Court assesses the Trustee's taxable costs against Madonna pursuant to 28 U.S.C. § 1920. The Trustee shall submit a bill therefor pursuant to Local Bankruptcy Rule 7054–1 within thirty days hereof.

### E. Count V of the Amended Complaint

Pursuant to Count V of the amended complaint, the Trustee seeks under 11 U.S.C. § 363(h) to sell the Burr Ridge Property free and clear of any interest that Mercedes may have. Section 363(h) provides as follows:

(h) Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—

(1) partition in kind of such property among the estate and such co-owners is impracticable;

(2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;

(3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

(4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h).

Turning to the Trustee's request to sell the Burr Ridge Property under § 363(h), the Court must examine the statutory requirements. Section 363(h) permits a trustee to sell both the estate's interest and the interest of any co-owner in property in which the debtor had an undivided ownership interest, such as a tenancy in common, joint tenancy, or tenancy by the entirety. *Geddes v. Livingston (In re Livingston)*, 804 F.2d 1219, 1223 (11th Cir. 1986). Such a sale is permissible only if the following elements have been met: (1) partition is impracticable; (2) sale of the estate's interest would realize significantly less for the estate than sale of the property free of the interest of the co-owners; (3) the benefit to the estate of such sale out-

weighs any detriment to the co-owners; and (4) the property is not used in the production, transmission, or distribution for sale of electric energy or of natural or synthetic gas for heat, light, or power. *Schechter v. Weiler (In re Blair)*, 330 B.R. 206, 211 (Bankr.N.D.Ill.2005); *Grochocinski v. Zeigler (In re Zeigler)*, 320 B.R. 362, 382 (Bankr.N.D.Ill.2005).

█ The burden of proving each of these statutory conditions is on the trustee. *Zeigler*, 320 B.R. at 382 (*citing Mostoller v. Kelley (In re Kelley)*, 304 B.R. 331, 337 (Bankr.E.D.Tenn.2003); *Gonzales v. Beery (In re Beery)*, 295 B.R. 385, 396 (Bankr.D.N.M.2003); *Hunter v. Levesque (In re McCoy)*, 92 B.R. 750, 751 (Bankr. N.D.Ohio 1988)). Once the trustee makes a prima facie case demonstrating that the estate would benefit from the sale of the property, the burden shifts to the party opposing the sale to show why the sale should not be approved. *Gazes v. Roswick (In re Roswick)*, 231 B.R. 843, 847 (Bankr. S.D.N.Y.1999).

█ As discussed above, the transfer of the Debtor's one-half interest in the Burr Ridge Property from himself to Mercedes has been avoided. Thus, the Court finds that the Debtor's one-half interest in the Burr Ridge Property belongs to the Debtor's bankruptcy estate. Section 363(h) applies to property that a trustee recovers under the Bankruptcy Code's avoiding powers. *See generally McCoy*, 92 B.R. 750 (trustee recovered fraudulently transferred property, leaving transferee with only a possessory interest in the property). Because the transfer to Mercedes has been avoided, she has nothing more than a possessory interest and homestead rights in the Burr Ridge Property. This is in addition to her former undivided one-half interest in the Property.

The first element under § 363(h) requires the Trustee to show that partition of the Burr Ridge Property is impracticable. It is undisputed that the Burr Ridge Property is a single family residence occupied by both the Debtor and Mercedes. Where property is a single family residence, there is no practicable manner of partition other than a sale and division of the proceeds. *Bakst v. Griffin (In re Griffin)*, 123 B.R. 933, 935 (Bankr.S.D.Fla. 1991) (*citing Morris v. Ivey (In re Ivey)*, 10 B.R. 230 (Bankr.N.D.Ga.1981)). "[P]artition of [a] marital home is impracticable; no buyer is likely to purchase a partial interest in a residence where others live." *Maxwell v. Barounis (In re Swiontek)*, 376 B.R. 851, 866 (Bankr.N.D.Ill.2007); *see also Peterson v. Lewis (In re Jenkins)*, 347 B.R. 77, 84 (Bankr.N.D.Ill.2006) (stating that there is no practical way to partition a single family home shared by a debtor and his spouse). Because it is undisputed that the Burr Ridge Property is a single family residence, absent evidence to the contrary, the Trustee has met his burden of proof as to § 363(h)(1). *See Voiland v. Gillissie (In re Gillissie)*, 215 B.R. 370, 380 (Bankr. N.D.Ill.1997); *Berland v. Gauthreaux (In re Gauthreaux)*, 206 B.R. 502, 505 (Bankr. N.D.Ill.1997).

Next, the Court finds that the Trustee proved the second element under § 363(h). It is generally accepted that the sale of a bankruptcy estate's undivided interest will generate substantially less than the sale of the property free of each owner's interest because of the chilling effect that the sale of the undivided interest usually has on prospective purchasers of the property, especially when the co-owners can continue to live on the property. *Swiontek*, 376 B.R. at 866 (court took judicial notice that a sale of the estate's undivided one-half interest would realize substantially less than a sale of the proper-

ty free of the interest of the co-owner); *Gillissie*, 215 B.R. at 380 (same); *Gauthreaux*, 206 B.R. at 506 (same). Absent evidence to the contrary, the Court takes judicial notice of the foregoing economic reality and finds that the Trustee has met his burden of proof as to § 363(h)(2).

The third condition of § 363(h) is that the benefit to the estate from the proposed sale must outweigh the detriment to the co-owner. When determining whether the benefit to the estate outweighs the detriment to the co-owner, courts must consider the economic and emotional detriment that the co-owner may face. *Harris v. Harris (In re Harris)*, 155 B.R. 948, 950 (Bankr.E.D.Va. 1993) (collecting cases). Courts have defined "detriment" as economic hardship, as well as any loss, harm, injury or prejudice resulting from the involuntary displacement. *Armstrong v. Trout (In re Trout)*, 146 B.R. 823, 829 (Bankr.D.N.D.1992). Payment of a significant dividend to creditors from the sale of property is a substantial benefit to the estate. *Gauthreaux*, 206 B.R. at 506. Where the benefit to the estate is small or speculative and the impact on the co-owner's life is large, courts have denied a trustee's request to sell a personal residence. *Id.* at 506–07; *Trout*, 146 B.R. at 830; *Griffin*, 123 B.R. at 936–37; *McCoy*, 92 B.R. at 753.

The Trustee argues and the Court agrees that the benefit of the sale of the Burr Ridge Property outweighs the detriment to Mercedes, the co-owner. The Debtor testified that a recent appraisal of the Burr Ridge Property places the fair market value at approximately $1.1–1.3 million. This testimony was undisputed. The Court finds that the sale of the estate's one-half interest in the Burr Ridge Property would result in a dividend to the Debtor's creditors. Mercedes failed altogether to address this element and failed

to present any evidence with respect to the detriment she would suffer if the Burr Ridge Property was sold. The Court finds that based on the record before it, it would not be equitable to insulate the Burr Ridge Property from the claims of the Debtor's creditors. Thus, the Court finds that the Trustee has demonstrated this element under § 363(h)(3).

Finally, it is undisputed that the Burr Ridge Property is not used in the production, transmission, or distribution for sale of electric energy or of natural or synthetic gas for heat, light, or power. Hence, the Trustee has met his burden of proof as to § 363(h)(4).

In sum, the Court holds that the Trustee has demonstrated all of the necessary elements under § 363(h). Accordingly, the Court authorizes the Trustee to sell the Burr Ridge Property free and clear of any interest that Mercedes may have in the Property, subject to her homestead rights under applicable Illinois law and her right to an undivided one-half share of the net sale proceeds. The Bankruptcy Code provides certain protections based on notice of the proposed sale required under Federal Rules of Bankruptcy Procedure 2002 and 6004. Either Mercedes or the Debtor or both can purchase the estate's interest in the Burr Ridge Property from the Trustee.

### V. CONCLUSION

For the foregoing reasons, the Court grants judgment in favor of the Trustee pursuant to Counts I through V of the amended complaint.

Under Count I of the amended complaint, the Court holds that the transfer of the Debtor's one-half interest in the Burr Ridge Property to the Land Trust, of which Mercedes was the sole beneficiary, was a fraudulent transfer under 740 ILL. COMP. STAT. 160/5(a)(1) and (2). As such,

the transfer is avoidable under § 544(b)(1) and 740 ILL. COMP. STAT. 160/8(a)(1). Pursuant to § 550(a)(1) and 740 ILL. COMP. STAT. 160/9(b), the Court holds that the Trustee may recover, for the benefit of the Debtor's estate, the Debtor's one-half interest in the Burr Ridge Property from the Bank, the initial transferee. The Court directs the Bank to deed the Burr Ridge Property back to the Debtor and Mercedes as joint tenants pursuant to 740 ILL. COMP. STAT. 160/8(a)(1), (2), & (3)(C).

With respect to Count II of the amended complaint, the Court holds that the Trustee has demonstrated that the transfer of $823,000 by the Debtor for the payment of the mortgage on the Burr Ridge Property was a fraudulent conveyance under 740 ILL. COMP. STAT. 160/5(a)(1) and (2). As such, the transfer is avoidable under § 544(b)(1) and 740 ILL. COMP. STAT. 160/8(a)(1). Pursuant to § 550(a)(1) and 740 ILL. COMP. STAT. 160/9(b), the transfer can be recovered for the benefit of the Debtor's estate. The Court awards judgment in the sum of $823,000 to the Trustee and against Mercedes, the entity for whose benefit the transfer was made. In addition, the Court awards the Trustee prejudgment interest from the date of the filing of the adversary proceeding, June 27, 2006, pursuant to the rate set forth in 28 U.S.C. § 1961. Moreover, the Court assesses the Trustee's taxable costs against Mercedes pursuant to 28 U.S.C. § 1920. The Trustee shall submit a bill therefor pursuant to Local Bankruptcy Rule 7054–1 within thirty days hereof. The Court declines to award the Trustee his attorneys' fees and tax same against Mercedes.

Under Count III of the amended complaint, the Court grants default judgment in favor of the Trustee and against Madonna. The Court holds that the Trustee has demonstrated that the transfer of $290,000 by the Debtor for the purchase of the

Hinsdale Property and the transfer of $31,000 for repairs and improvements to that Property were fraudulent under 740 ILL. COMP. STAT. 160/5(a)(1) and (2). As such, the transfers are avoidable under § 544(b)(1) and 740 ILL. COMP. STAT. 160/8(a)(1). Pursuant to § 550(a)(1) and 740 ILL. COMP. STAT. 160/9(b), the transfers can be recovered for the benefit of the Debtor's estate. The Court awards judgment in the sum of $321,000 to the Trustee and against Mercedes and Madonna, the entities for whose benefit the transfers were made. Further, the Court awards the Trustee prejudgment interest from the date of the filing of the adversary proceeding, June 27, 2006, pursuant to the rate set forth in 28 U.S.C. § 1961. Moreover, the Court assesses the Trustee's taxable costs against Madonna and Mercedes pursuant to 28 U.S.C. § 1920. The Trustee shall submit a bill therefor pursuant to Local Bankruptcy Rule 7054–1 within thirty days hereof. The Court declines to award the Trustee his attorneys' fees and tax same against Mercedes and Madonna.

Pursuant to Count IV of the amended complaint, the Court holds that the Trustee has demonstrated that the transfer by the Debtor of $63,000 to satisfy a mortgage on property owned by Madonna was fraudulent under 740 ILL. COMP. STAT. 160/5(a)(1) and (2). As such, the transfer is avoidable under § 544(b)(1) and 740 ILL. COMP. STAT. 160/8(a)(1). Pursuant to § 550(a)(1) and 740 ILL. COMP. STAT. 160/9(b), the transfer can be recovered for the benefit of the Debtor's estate. The Court awards a default judgment in the sum of $63,000 to the Trustee and against Madonna, the entity for whose benefit the transfer was made. In addition, the Court awards the Trustee prejudgment interest from the date the adversary proceeding was commenced, June 27, 2006, pursuant to the rate set forth in 28 U.S.C. § 1961. Moreover, the Court assesses the Trus-

tee's taxable costs against Madonna pursuant to 28 U.S.C. § 1920. The Trustee shall submit a bill therefor pursuant to Local Bankruptcy Rule 7054–1 within thirty days hereof. The Court denies the Trustee's request for an award of attorneys' fees.

Under Count V of the amended complaint, the Court holds that the Trustee has demonstrated all of the necessary elements under 11 U.S.C. § 363(h). Accordingly, the Court authorizes the Trustee to sell the Burr Ridge Property free and clear of any interest that Mercedes may have in the Property, subject to her homestead rights under applicable Illinois law and her right to an undivided one-half share of the net sale proceeds.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.